THE STATE OF KANSAS v. GEORGE M. BUFFINGTON.

No. 13,411.   (72 Pac. 213.)

SYLLABUS BY THE COURT.

CRIMINAL PRACTICE—*Homicide—Instructions to Jury.*   In a
prosecution for murder, where the defense is self-defense, and
there is some substantial evidence that would tend to mitigate the
homicide to manslaughter, however weak and inconclusive such
evidence may appear to the court, it is error to refuse to instruct
the jury concerning manslaughter.

Appeal from Ellsworth district court; R. F. THOMP-
SON, judge.   Opinion filed April 11, 1903.   Reversed.

*C. C. Coleman*, attorney-general, *Dallas Grover*,
county attorney, and *G. F. Grattan*, for The State.

*Charles J. Evans*, and *Ira E. Lloyd*, for appellant.

The opinion of the court was delivered by

GREENE, J. : This is an appeal from a conviction of
murder in the second degree.   The court refused the
request of the defendant to instruct the jury in the

law of any of the degrees of manslaughter, and over the objection of the defendant gave the following instruction :

"If you find from the evidence, beyond a reasonable doubt, that the defendant is guilty of murder in the second degree, as I have defined it, committed in the manner charged in the information upon the person of said Oda Miller, and at the time and place therein named, then you should return a verdict against the defendant of murder in the second degree, but if you do not so find, then you should acquit the defendant."

The refusal to instruct upon the crime of manslaughter and the giving of the foregoing instruction are the principal errors complained of by appellant.

The following are the material facts : At the time of the homicide the appellant was a farmer, living with his wife and three grown daughters, and possibly a grown son, on a farm in Ellsworth county. It appears that for twelve years prior to the homicide he had been suffering from catarrh of the stomach and other chronic ills.   He was fifty-three years of age, and by reason of his disease was unable to perform manual labor.   During the harvest of July, 1902, he had in his employ Ed. Knight, John Strong, Ed. Shepard, Charles McComb, Oda Miller, and his son, Walter Buffington, and his son-in-law, Arnold Johnson.   Johnson was his foreman and manager. His daughter Emma made out the time-slips, gave them to the men, and placed such account on a book, from which the appellant made his settlements.

On the evening of July 15, 1902, after these time-slips had been given the men, and while all were at supper, the appellant told the men that he desired to settle with them that evening, as he intended going away early next morning for medical treatment. After he had finished his meal, and while most of

the men were at the supper table, he went into a room in his residence which was used by him as a bedroom and office. Soon thereafter Ed. Shepard, one of the hands, followed for the purpose of settling.

It appears that there was a difference of a fourth of a day between the time of these men as kept by the young lady and that claimed by the men, or at least some of them. This difference was being talked over between the appellant and Shepard when a statement was made by Shepard that the men claimed this extra time. When asked "Who?" he replied, "Myself, McComb, and Oda Miller." To this the appellant said : "Miller is the last man I would pay that, because he has shirked." This remark was made in a tone of voice so loud that Miller, who at the time was at the supper table, heard it, and, coming into the room where appellant and Shepard were, said : "Old man, you don't know what you are talking about. Old man, I'll fix you good and plenty." Shepard then walked over to Miller and said : "Leave the old man alone ; we can settle this without any trouble." The appellant testified :

"I turned around and I says, 'You get out of this room ; I don't want any trouble.' I says, 'You have no right in this room unless you are called in.' I turned around to get my pencil and concluded I would allow Shepard the quarter of a day. As I did so Miller jerked the chair from under me, pitching me forward on the floor on my hands and knees. As I went to the floor, my wife grabbed me around the neck. I looked up and saw Miller was standing with the chair raised in a striking attitude over myself and wife."

It appears that, in preparing to go away, the appel- lant had partially packed his grip the day before, leaving it open near his desk on the floor, intending

to complete packing at his convenience.   On the day before the homicide the hired men were out shooting at a mark.   Appellant took two pistols out, one of which was fired ; the other he took back to the house and threw in his open grip.

It is in testimony by appellant, his wife, and Shepard, that after the wife caught appellant around the neck and before the shooting, and while Miller held the chair, Miller said :  "Get out of the way, old woman," or "Get away, old lady ; I'll fix him good and plenty."    When appellant was thrown out of the chair and onto the floor he was within reach of his grip containing the pistol.   He testified :

"While Miller was standing over me with the chair and my wife had her arms around my neck, I grabbed the revolver in my right hand, thrust it under my left arm between my wife and my side, and fired at Miller. My wife then let go of my neck, and as I raised I shot the second time, and at that time Miller came right on to me and clinched with me and we tusseled quite a bit, and I shot twice more and Miller fell.   I had no ill will towards Miller ; had spoken very few words to him before that time ; and had no intention of killing him.   I did not know that I had killed the man until after the transaction was over."

In answer to a question by counsel, whether Miller stood as counsel was then standing, he replied :  "I was so excited I did not know how he stood."

In summarizing this evidence we have given that which is most favorable to the appellant.   Many of these statements were contradicted by other witnesses.

The defendant in a criminal prosecution has a right to have the court instruct the jury in the law applicable to his contention, if it be supported by substantial evidence, however weak, unsatisfactory or inconclusive it may appear to the court.   To refuse so to in-

struct the jury would be to invade its province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of an inferior degree of the offense charged, but whether there is any substantial evidence tending to prove an inferior degree of the offense. If there is, then the question of such degree should be submitted to the jury. The unsupported testimony of the defendant alone, if tending to establish such inferior degree, is sufficient to require the court so to instruct.

We have examined this evidence carefully and believe the court erred in not giving the instructions ·requested by the defendant upon the inferior degrees of homicide, and also erred in giving the instruction above quoted. For these reasons the judgment of the court below is reversed, and the cause remanded for a new trial.

All the Justices concurring. BURCH, J., not sitting.