No. 26,379.

THE STATE OF KANSAS, *Appellee*, v. LLOYD CUNNINGHAM, *Appellant*.

SYLLABUS BY THE COURT.

1. HOMICIDE—*Instructions—Degree of Offense.* In a prosecution upon a charge of murder where there is substantial evidence tending to show that the offense committed falls within one or more of the degrees of manslaughter, it is the imperative duty of the court upon request, in charging the jury, to state fully the law relating to such inferior degrees of the offense.

2. SAME—*Instructions—Degree of Offense—Effect of Inconclusive Evidence.* The fact that the court may deem the evidence supporting the minor degree to be weak and inconclusive, does not warrant it in refusing an instruction on that issue. The credibility and weight of the evidence are questions for the jury and not a matter of law for the decision of the court.

Appeal from Anderson district court; HUGH MEANS, judge. Opinion filed March 6, 1926. Reversed.

*J. W. Mertz* and *Manford Schoonover*, both of Garnett, for the appellant.

*C. B. Griffith*, attorney-general, *Roland Boynton*, assistant attorney-general, and *Bert L. Woods*, county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Lloyd Cunningham was charged with murder in the first degree and convicted of murder in the second degree. The only question presented on his appeal is an objection to the refusal of the court to define certain degrees of manslaughter and to instruct the jury in regard to the law relating to those grades of homicide. The defendant struck George Parker on the breast with a pocketknife and he died from the result of the cutting. It is contended that the assault was committed on the spur of the moment, in the heat of passion and without intent to kill, and that therefore instructions on the third and fourth degrees of manslaughter were required. The statute relating to these degrees of manslaughter reads:

"The killing of another in the heat of passion, without design to effect death, by a dangerous weapon, in any case except wherein the killing of another was justifiable or excusable, shall be deemed manslaughter in the third degree." (R. S. 21-413.)

The definition of manslaughter in the fourth degree is as follows:

Homicide, 29 C. J. p. 1163 n. 8, 9; 30 C. J. pp. 322 n. 65, 335 n. 66, 397 n. 28, 410 n. 47, 414 n. 79, 449 n. 79; 14 R. C. L. 792.

"The involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion, in any cases other than justifiable homicide, shall be deemed manslaughter in the fourth degree." (R. S. 21-419.)

It is made the duty of the court in charging the jury, to state to them all matters of law which are necessary for their information in giving their verdict. (R. S. 62-1447.) The rule in homicide cases has been repeatedly declared that the court should instruct the jury not only on the evidence adduced by the prosecution in support of the higher offense, but also upon the whole evidence and especially upon the lower degrees of the offense, if there is substantial evidence applicable to the lower degrees. The instructions should cover every issue or theory in the case which has support in the evidence. Whether the evidence tended to support the lower degrees of the offense appears to the court to be weak and unsatisfactory, the accused is nevertheless entitled upon request to have the issue and the effect of the evidence submitted to the jury. Among the numerous cases relating to the rule is *State v. Patterson*, 52 Kan. 335, 34 Pac. 784, in which it was said:

"Where there is even slight evidence that the offense committed may have been of a lower degree than the one charged, it is proper for the trial court to give to the jury the law of such inferior offenses." (Syl. ¶ 7.)

In *State v. Buffington*, 66 Kan. 706, 72 Pac. 213, it was held to be reversible error to refuse an instruction as to the lower degrees upon which there was support in the evidence, and that such an instruction was required although the evidence as to the lower grades might be regarded by the court to be weak, unsatisfactory and inconclusive. See, also, *State v. Curtis*, 93 Kan. 743, 145 Pac. 858, and cases cited therein.

The force and credibility of the evidence touching the degrees of manslaughter are questions for the jury, and when the court for itself determines the credibility and weight of such evidence, it is invading the province of the jury. Where there is no substantial testimony applicable to the lower degrees, and all of it taken together shows that the offense if committed was clearly of the higher degree, instructions relating to the inferior ones are not necessary. In some cases where the evidence was such that the court might have presented the law of the lower degrees, without error, but omits to do so, and the accused does not request such an instruction, the omission is not material error. (*State v. Winters*, 81 Kan. 414, 105

Pac. 516; *State v. Stout,* 114 Kan. 585, 220 Pac. 180.) Here there was a specific request for instructions on the degrees of manslaughter which the court on consideration refused, and after instructing the jury as to murder in the first and second degrees, advised the jury that their verdict must be either one of the degrees of murder or an acquittal.

Turning to the testimony, it is disclosed that on the evening of the assault, defendant was in a restaurant engaged in a conversation with Van Dyke, the proprietor. Four boys, Kenneth Frank, Ralph Parker, Clayton Mills, and George Parker, entered the restaurant and passing the defendant, Frank said, "Hello, Archie!" It appears that the name "Archie" was applied to the defendant because of a fancied or other resemblance to a peculiar character in the town named "Archie Coots," and defendant was sometimes annoyed by the use of the name and to some parties had protested against its application to him. Van Dyke testified that defendant laughed at the name used by Frank, and made an expression like "the little dickens." The boys went on back to the kitchen of the restaurant and in a few minutes returned to the place where defendant and Van Dyke were talking. Defendant asked, "Frank, what did you call me?" and Frank replied, "Archie, but I did not mean it." Whereupon Ralph Parker remarked in a joking way, "I believe he did mean it, Archie," but Frank responded, "No, I didn't." There was a little more bantering of that character, but Van Dyke stated that no one appeared to be angry, and Clayton Mills interposed and said, "I believe they both meant it." George Parker, who was in the room some distance away and had previously taken no part in the parley, approached and said, "What about this Archibald hooray?" and defendant says, "I will show you." And one witness testified that he said, "I will cut you," and pulling his knife he took a step or two towards George Parker and struck him on the breast with the knife. Van Dyke says the defendant did not then appear to be excited, but one witness said that he thought he detected an angry expression on his face at that time. The facts and circumstances, which are practically without dispute, show that the cutting was a criminal act for which punishment is deserved, but there is much in the testimony tending to show that the offense committed was lower in degree than murder in either

State v. Cunningham.

the first or second degrees. There is a good basis for the theory that the defendant did not intend to kill, had not manifested any hate or hostility towards the young men until about the time the blow was struck. We think the evidence not only warranted but required the giving of the instructions relating to the degrees of manslaughter. In *State v. Bloom*, 91 Kan. 156, 136 Pac. 951, the fatal blow was struck with a pocketknife as in this case, and there the court refused to instruct on any one of the degrees of manslaughter or submit a form of verdict in accordance with the definition of that degree. The instruction in that case was not asked within the time prescribed by a rule of the court, but it was asked before the case was submitted to the jury. It was held that in a prosecution for murder an instruction should be given defining the minor degrees of the offense of which there is any evidence, and that it should not be refused because not requested within the time fixed by a rule of the court. While we hesitate to set aside convictions of persons shown to be guilty of an offense, the legislature has prescribed degrees of the offense upon which punishment is to be measured, and where the evidence plainly tends to support the theory of one of the lower degrees of the offense charged, it is the imperative duty of the court upon request to define these degrees and instruct the jury as to the law respecting them.

The judgment is therefore reversed and the cause remanded for a new trial.