No. 38,782

State of Kansas, *Appellee,* v. Carl H. Rhoten, *Appellant.*
(257 P. 2d 141)

Opinion filed May 9, 1953.

*John B. Markham,* of Parsons, argued the cause, and *Elmer W. Columbia,* and *Herman W. Smith, Jr.,* both of Parsons, were with him on the briefs for the appellant.

*Paul E. Wilson,* assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, and *Oren Gray,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: Defendant, Carl H. Rhoten, was arrested and eventually charged in an information with the commission of three separate and distinct crimes, prohibited under the provisions of G. S. 1949, 21-915. Subsequently, he was tried by a jury which found him guilty of setting up and keeping gambling devices and of keeping and maintaining a common gambling house as charged in Counts 1 and 3 of the information and acquitted him of inducing, enticing, and permitting persons to gamble as charged in Count 2 of that pleading. Thereafter, his motion for new trial having been overruled, he was sentenced on the verdict of the jury in accord with the statute. The appeal is from that judgment and sentence and from the order overruling his motion for new trial.

The instant record discloses some conflicting evidence. However, the principal questions involved on appellate review deal with its sufficiency and are to the effect it fails to establish commission of the two crimes of which the defendant was found guilty under the verdict of the jury. In that situation we are not concerned with conflicts in the testimony and need only relate evidence tending to uphold the verdict. In doing this, based upon a careful examination of the record, we shall give our version of the supporting and pertinent facts disclosed by the evidence in highly summarized form without, for the moment, identifying any of the witnesses and will hereafter refer to the parties as the state and the defendant.

On Sunday morning August 5, 1951, at about 2 a. m. the respective sheriffs of Labette and Montgomery counties with their deputies, accompanied by two special investigators from the office of the attorney general, raided a house located in Labette county, known as the Goodtime Club, located about six miles east of Coffeyville on United States Highway No. 166. The house was a two-story frame building with several rooms downstairs and a large

room about thirty-five by twenty feet, together with a bathroom, upstairs. The officers surrounded the house preparatory to entrance. As they did so they found a hose stretched across the driveway with a warning system which sounded in the house whenever pressure was applied thereto. The system was similar in character to that used in gasoline filling stations to warn attendants of the approach of customers. After surrounding the house the officers heard music and voices through an open upstairs window. One of them stated he could tell there was a dice game in progress from the sounds that were coming from the window and that he heard the statements "Place your bets," "New man shooting" and other conversations which he described as "Lingo" used in connection with the operation of a gambling game. After they had knocked on the door and demanded admittance the voices in the upstairs room ceased immediately and the officers heard the sound of small objects being dropped or thrown down inside the wall or air shaft on the north side of the building. After an elapse of about ten minutes, when their continued knocking brought no response, they forced the front door and entered the building. Thereupon they discovered that the outer door was connected with a buzzer system which sounded in the upstairs room when that door was opened. Inside the vestibule they were confronted with another door, which was also opened by force, and discovered that it was also connected with a buzzer system. In going upstairs the officers who had entered the house found eleven persons, including the defendant, in the upstairs room. Thereafter they searched the premises. This search revealed a system of mirrors whereby a person in the upstairs room could watch the front door and observe the approach of anyone entering the vestibule. It also disclosed an electrically-controlled apparatus, whereby the door opening from the vestibule to the upstairs room could be opened by pressing a button upstairs, and a secret compartment in the wall of the bathroom. During the search of the room the officers found an instrument, identified as a dice stick, designed for moving dice on the table during a dice game. They also found that on the backs of throw rugs on the floor of the room there were designs identified as dice covers which were so adapted they could be placed on a large table, located in the center of the room, for the purpose of playing the game of dice. There was a lamp located over and close to the top of this table. It was obvious this light was used as a means of lighting the surface of the table and not for reading purposes. In addition two

packs of playing cards were found in the room. A search of the defendant disclosed a large sum of money on his person. Other sums of money were found hidden in the room. Divers sums of money were found on the persons of those present in the room.

There was testimony on the part of several witnesses indicating that the defendant, and perhaps one other person, were the managers of the Club and in charge of the premises, also that defendant was present when the first guests arrived and admitted some of the guests, also that he had invited persons to the house on other occasions. In fact one of the witnesses, an officer, testified he asked the defendant who was in charge of the place and that the latter told him that he was one of two persons in charge. Another witness, a member of the raiding party, stated that in a conversation in which he was present the defendant told some of the officers that he was running the place for a Mr. White and that he was the person in charge. This same witness, who was one of the investigators from the attorney general's office, stated that later in the evening he found a secret compartment in the wall and was about to break into it when the defendant protested about his breaking the latch and then showed him the trip which enabled him to open the secret compartment. Another of the state's witnesses testified that he had engaged in a dice game on the premises that evening and had lost $60. Another officer testified that while interrogating one of the persons found in the house at the time of the raid such person, in the presence of the defendant, stated in substance that those present were out there enjoying themselves, that they paid so much a year dues to come out to the house for that purpose and have a place where they could have a little entertainment and that occasionally they would have a little game when the stakes got a little high.

Before submitting the cause to the jury the trial court instructed that body on the applicable law. No objection was made by defendant to such instructions and, as he now frankly concedes, they became the law of the case. Nevertheless, contentions advanced on appellate review require they be given special attention.

Instruction 12 deals with what the state was required to prove in order for the jury to convict under Count 1 of the information. It reads:

"Before you will be warranted in finding the defendant guilty of the crime of setting up and keeping a gambling device, as charged in the first count of the information, you must find and be convinced by the evidence herein, beyond a reasonable doubt, that in the County of Labette, and State of Kansas,

within two years prior to the 2nd day of October, 1951, (1) that at the place described in the information a gambling device or instrument was in existence; (2) that the gambling device, playing cards, dice stick, and dice table covers, were actually used for the purpose of gambling; (3) that the defendant was in fact the keeper of said gambling devices; (4) that the defendant, being the keeper, kept such gambling devices for the purpose of gain; but if you do not so find and believe from the evidence herein that the State has proved each material ingredient beyond a reasonable doubt, then you must acquit the defendant of the crime charged in the first count of the information."

Instruction 14 relates to the proof necessary to uphold a conviction under Count 3 of the information. In substance it contains language identical with that appearing in instruction 12 except for subsection 5. It contains language in lieu of such subsection which reads:

". . . that the defendant was the keeper of a common gaming house, or the keeper of a house, room or place to which persons resorted for the purpose of gambling, and gambled therein; but if you do not so find and believe from the evidence herein that the State has proved each material ingredient beyond a reasonable doubt, then you must acquit the defendant of the crime charged in the third count of the information."

The gist of the principal contention advanced by defendant on appellate review is that the state failed to make out and establish all of the material elements which the court instructed were essential to convict under Counts 1 and 3 of the information.

Nothing will be gained by repeating the evidence, to which we have heretofore referred, on which the cause was submitted. It suffices to say that when it is reviewed and carefully analyzed we are convinced it discloses sufficient probative facts and circumstanes to warrant the trial court's action in submitting to the jury for its decision the questions whether the state had established each and all of the essential elements of the crimes charged in Counts 1 and 3 of the information by the degree of proof required by its instructions and that therefore there is no sound ground for disturbing the verdict or for holding the trial court erred in refusing to grant the defendant a new trial on the premise the evidence failed to establish he was guilty of setting up and keeping gambling equipment as charged in Count 1 of the information and of keeping and maintaining a common gaming house and/or a place in which persons were accustomed to resort for the purpose of gambling as charged in Count 3 of that pleading.

It must be kept in mind that in a criminal prosecution any of the essential elements of the crime charged may be proved by circumstantial evidence (*State v. Hupp*, 154 Kan. 410, 118 P. 2d 579).

Conceding, as defendant suggests in argument, that the evidence on which the state relies is partially circumstantial and that hence the circumstances upon which it relies must be such they exclude every reasonable hypothesis except guilt does not warrant or permit a contrary conclusion. The instructions relating to the weight the jury should have given the circumstantial evidence adduced were, as we have previously indicated, not objected to and are the law of the case. Under such conditions the rule in this jurisdiction is well established.

Years ago in *State v. Hunter,* 50 Kan. 302, 32 Pac. 37, we held:

"A conviction may rest upon circumstantial testimony alone, but the facts and circumstances must be such as are absolutely incompatible upon any reasonable hypothesis with the innocence of the accused, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the accused. However, where such testimony fairly tends to show the guilt of the defendant, the weight of the same is for the jury; and where the jury has found, after being properly instructed, that the defendant is guilty, and the verdict has been approved by the trial court, it will not be disturbed because of the insufficiency of the evidence." (Syl., ¶ 1.)

Another, and more recent, decision is *State v. Fouts,* 169 Kan. 686, 221 P. 2d 841, where we quote with approval and adhere to the rule announced in the decision last above cited.

See, also, *State v. Ragland,* 170 Kan. 346, 226 P. 2d 251, where it is said:

"This court recognizes the rule laid down in *State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; Syl. ¶ 4 of which is as follows:

"'When considering on appeal the sufficiency of circumstantial evidence to sustain conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt, following *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174.'" (p. 349.)

When the circumstantial evidence adduced by the state is considered in conjunction with what may be termed the direct evidence of record we have little difficulty in holding there is ample basis for a reasonable inference of guilt on the part of the defendant. That under our decisions is all that is required on appellate review. The result is the judgment must be affirmed unless the record discloses trial errors which require the granting of the motion for a new trial.

The first contention advanced respecting the subject just mentioned is that the trial court admitted illegal and prejudicial testi-

mony, over defendant's objection, when it permitted one of the raiding officers, named Gill, to testify that while standing directly under the open window of the upstairs room of the house in question he heard the statement "Place your bets," "New man shooting" and other conversations which he described as used in connection with the operation of a gambling game. Conceding this testimony may have been damaging to the defendant's case it was not prejudicial in the sense he uses that term unless it was erroneously admitted. His contention it was so admitted is based upon the premise it was hearsay evidence and therefore incompetent. The point is not well taken. For all the record discloses this testimony may have been admitted not for the purpose of establishing the truth of what was said but for the purpose of establishing a chain of circumstances warranting a conclusion the room was being used for gambling purposes. In that situation the established rule is that the court may properly receive evidence of statements of the kind in question for such purpose. In explaining why the admission of this type of testimony does no violence to the hearsay evidence rule the author in 6 Wigmore on Evidence, 3d Ed., § 1766, p. 178, states:

"The prohibition of the Hearsay rule, then, does not apply to all words or utterances merely as such. If this fundamental principle is clearly realized, its application is a comparatively simple matter. The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted."

For decisions and authorities supporting the foregoing principle see *Baum v. State,* 163 Md. 153, 161 Atl. 244; *McLaughlin v. State,* 123 Neb. 861, 244 N. W. 799; *People v. Radley,* 68 Cal. App. 2d 607, 157 P. 2d 426; 20 Am. Jur. 404, § 457; 31 C. J. S. 940, 988, §§ 200, 239. Indeed, although we find none directly in point, our own decisions recognize the rule and indicate that under circumstances such as are here involved the testimony admitted was original evidence, not hearsay. (*Bank v. Hutchinson,* 62 Kan. 9, 18, 61 Pac. 443; *Mills v. Riggle,* 83 Kan. 703, 708, 112 Pac. 617; *Malone v. New York Life Ins. Co.,* 148 Kan. 555, 559, 83 P. 2d 639; *State v. Funk,* 154 Kan. 300, 303, 118 P. 2d 562.)

Next it is argued the trial court erred in permitting officers Gill and Winkleman to testify as to how the throw rugs, found on the floor and on which there were designs identified as dice covers, could be used as gambling devices. The specific objection to this testimony is that it was speculative and conjectural. These two wit-

nesses were experienced investigators from the attorney general's office and, while they did not claim to be expert witnesses on the subject, both testified in substance as to having observed similar equipment on previous occasions. Under such circumstances it cannot be said the trial court erred in admitting this testimony.

Finally it is argued the verdict shows passion and prejudice on the part of the jury. We do not agree. If anything an examination of the record compels a contrary conclusion. There was ample evidence of record, both direct and circumstantial, to justify the jury in concluding that under the existing physical facts and circumstances defendant had participated in setting up and keeping gambling devices and in maintaining a common gaming house where persons were accustomed to resort for the purpose of gambling. On the other hand the state failed to produce any witness who testified that the defendant had personally induced, enticed, or permitted persons to bet and play upon the gambling tables and the gambling devices on the evening in question. With a discerning eye the jury saw fit to return a verdict of not guilty on that Count of the information. In the face of that fact we are unwilling to say the verdict was given under the influence of passion and prejudice.

All specifications of error presented and discussed by defendant have now been considered and disposed of. Others specified, but neither briefed nor argued, must be regarded as abandoned and hence not subject to appellate review.

We find nothing in the record or in the arguments advanced by counsel to warrant or justify a reversal of the judgment. Therefore it must be and is hereby affirmed.