No. 40,618

STATE OF KANSAS, *Appellee,* v. EMMITT WILLIAMS, *Appellant.*

(322 P. 2d 726)

Opinion filed
March 8, 1958.

*Elisha Scott* and *Charles S. Scott,* both of Topeka, argued the cause, and *John J. Scott* and *Samuel C. Jackson,* both of Topeka, were with them on the briefs for the appellant.

*Phillip L. Harris,* special prosecutor, argued the cause, and *John Anderson,* attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant was tried on an information charging him with the crime of murder in the second degree (G. S. 1949, 21-402). From a conviction of manslaughter in the second degree (G. S. 1949, 21-411), he appeals.

A brief statement of the facts follows: On October 1, 1956, at approximately 10:30 p. m., defendant, Emmitt Williams (appellant), and his friend Saunders were arrested for creating a disturbance in a liquor store and were placed in the "bull pen" of the police station with a number of other prisoners. Saunders was so unmanageable that he was later put in a single cell. Defendant discussed with Saunders the prospect of taking over the "bull pen." Becoming combative, defendant struck and kicked two other prisoners.

The deceased, Master Sergeant Charles J. Nower, was picked up by police officers at a city bar, where he had been creating a disturbance. Being unruly, his hands were handcuffed behind his back and, about 11:30 that same evening, he was taken to the police station, where he was placed in the "bull pen" along with defendant and other prisoners. Testimony revealed that no one saw any marks of violence on Nower at the time of his arrest and his in-

carceration in the "bull pen"; that he was drunk and belligerent, as was defendant.

Subsequently, a fight ensued between deceased and defendant, who struck Nower with his fist. Nower, still handcuffed, became a target for defendant, who struck and kicked the handcuffed Nower at will. The fight ended with Nower knocked into the shower stall. The record discloses that defendant not only struck Nower several times with his fists, but also kicked him after knocking him down and into the shower stall. Defendant testified that he struck Nower five or ten times and that after the last blow Nower "didn't come back no more." He further testified that after his fight with Nower there was blood on his clothes and that he remembered saying, after learning of Nower's death, "Why did I hit him so hard?"

Defendant was released from the jail about 12:30 a. m., on October 2, and about 1:10 a. m. Nower was found dead in the shower stall with blood on his face and chest. An autopsy was performed and "the death certificate showed the condition directly leading to death as contusion left frontal pole of the brain and that the antecedent cause was due to multiple abrasions of the face." Medical testimony substantiated the mentioned conclusion.

On October 2 a complaint was filed in the county court and a warrant was issued charging defendant with murder in the first degree, in that on October 2, 1956, he did then and there unlawfully, wilfully and feloniously and with deliberation and premeditation kill one Charles J. Nower by striking the said Charles J. Nower with his fists or other unknown objects contrary to the statute. On October 3 the defendant appeared in person and was arraigned upon the charge contained in the complaint and warrant. He waived a preliminary hearing and was properly bound over to the district court for trial. Later, an information was filed in the district court charging defendant with murder in the second degree, in that defendant, on or about October 2, 1956, unlawfully, feloniously, purposely and maliciously but without premeditation and deliberation did kill one Charles J. Nower by striking the said Charles J. Nower with his fists and feet contrary to the statute. After the information charging murder in the second degree was filed, defendant objected to going to trial on the ground that he had had no preliminary hearing on that charge. At this point the district judge suspended the proceedings and, sitting as a magistrate under G. S. 1949, 62-601, gave defendant a preliminary hearing, to which de-

fendant made no objection but participated therein. At the conclusion thereof, the court, acting as magistrate, found that the crime of second degree murder had been committed and there was probable cause to believe defendant had committed said crime. The magistrate thereupon bound defendant over to the district court for trial on the charge of murder in the second degree. Subsequently, the county attorney filed a new information charging defendant with murder in the second degree.

It is a well-settled rule in this state that under our statute a judge of the district court is a magistrate authorized to conduct a preliminary examination. (G. S. 1949, 62-201, 62-601.) In *Hancock v. Nye*, 118 Kan. 384, 388, 234 Pac. 945, we stated:

"The state has supplied itself with many magistrates. (R. S. 62-201, 62-210, 62-601, 62-629.) Any one of those designated by the statute could have served as examining magistrate. Even a district judge himself is an examining magistrate *ex officio*, and while he has plenty to do without exercising that function, if a serious question is unexpectedly raised at *nisi prius* whether an accused has actually had a preliminary examination touching the specific offense for which he is on trial, it does not imperatively follow that the public expense for per diem and mileage of jurors and witnesses convened for his trial must all go for naught. In such a dilemma the district judge with propriety may suspend proceedings at *nisi prius* for an hour or two and give the accused a preliminary examination himself, and where no prejudice to accused or real justification for a continuance is apparent, the information may be refiled and the regular trial recommenced and proceeded with without delay. These observations are appended here as a reminder that in this state our criminal code for the administration of justice is vastly more expeditious and efficient than we lawyers and judges are always mindful to give it credit for. (See *The State v. Keehn*, 85 Kan. 765, 118 Pac. 851; *The State v. Fleeman*, 102 Kan. 670, 677, 171 Pac. 618.)"

(See also *State v. McCombs*, 164 Kan. 334, 336, 188 P. 2d 922.)

Defendant contends that the district judge sitting as the magistrate was without jurisdiction for the reason that no new complaint charging defendant with second degree murder was filed. There is no merit in this contention. No new complaint was necessary, as the defendant was in custody. In *State v. Fleeman*, supra, 675, it is stated:

"The writer of the opinion in the case of *Redmond v. The State*, 12 Kan. 172, ventured the assertion that when a person is arrested for one crime, and on preliminary examination is bound over for another, a new complaint ought to be filed, but said the statute does not require it. The reason the statute does not require a new complaint is that the accused is already in custody, and the complaint has no function to perform except to furnish the basis for a warrant. For forty-five years the legislature has ignored the suggestion, and

it may now be regarded, not only as *obiter*, but as defunct *obiter*. In this instance the county attorney filed a new complaint and had a new warrant issued. They served no purpose whatever, except to afford the defendant opportunity to multiply objections to the regularity of the preliminary procedure."

In the instant case, it is apparent, however, that the court treated the first information filed as a complaint charging second degree murder. The preliminary hearing was had without objection on the part of defendant. He participated in that hearing; and after he was bound over to the district court for trial, a new information, charging him with murder in the second degree, was filed. Subsequently, defendant announced he was ready for trial, waived formal arraignment and entered a plea of not guilty. The cause then proceeded to trial.

It is defendant's next contention that the trial court erred in overruling his challenge for cause of prospective juror Greenawalt. Juror Greenawalt on his *voir dire* examination testified, when examined by counsel, that he had read and heard of the case but had formed no definite opinion one way or another regarding the guilt or innocence of defendant; that there might be some doubt in his mind either way; and that his opinion was not so deeply rooted but that evidence could change it. He further stated that he could lay aside what he had heard and what opinion he had made and could decide the case wholly upon the evidence to be presented.

The question of whether a juror is disqualified because he has formed or expressed an opinion on the issue must be decided on the facts in the particular case. It is an issue of fact that the trial court must determine. (G. S. 1949, 62-1410.) The trial court's finding on such a question will not be disturbed unless it appears there has been an abuse of discretion. The rule enunciated in *State v. Hooper*, 140 Kan. 481, 37 P. 2d 52, and reiterated in *State v. Springer*, 172 Kan. 239, 242, 239 P. 2d 944, reads:

"The determination of the question whether a prospective juror is qualified to sit in a case is a trial of that question to the court. (R. S. 62-1410). The trial court's decision on that question will not be disturbed on appeal unless disqualification appears as a matter of law, or it is disclosed that there has been an abuse of the court's discretion. (*State v. Stewart*, 85 Kan. 404, 116 Pac. 489.) 'It is the mind of the court which must be satisfied that the challenged juror is free from bias and prejudice.' (*Morton v. The State*, 1 Kan. 468, 472.) (See, also, *State v. Molz*, 91 Kan. 901, 139 Pac. 376; *State v. Mullins*, 95 Kan. 280, syl. ¶ 6, 147 Pac. 828; *State v. Tucker*, 137 Kan. 84, 91, 19 P. 2d 346.)"

We further stated that it is difficult to search the mind of a juror

and ascertain if he has an opinion or merely a fleeting impression. This business of obtaining a qualified juror is a tedious one at best. We will not hold that in such a case the trial court abused its discretion, unless it clearly so appears; and defendant has not made it so appear.

Moreover, it is not questioned that the defendant did not use all his peremptory challenges. The rule is stated in 24 C. J. S. Criminal Law § 1900 b. (pp. 888, 889):

"Error of the court in overruling challenges for cause is not prejudicial where at the time of the completion of the jury accused had not exhausted his peremptory challenges. This is so both in cases where the juror was excluded on peremptory challenge and where he served on the jury, because of accused's failure to avail himself of his right to a peremptory challenge. Nor can accused complain of the overruling of a challenge for cause, where it does not appear that he challenged the juror peremptorily . . ."

In the present case, defendant cannot now be heard to complain of the court's overruling his challenge for cause when he had an opportunity to challenge the juror peremptorily, and failed to do so.

Defendant next contends that the court erred in overruling his motion to strike certain remarks from the county attorney's opening statement to the jury. We have examined the record and are unable to find any statement made by the county attorney which was not later supported by the evidence. We find no prejudicial error in this respect.

It is next contended by defendant that the court erred in overruling his motion for discharge at the close of the state's evidence. He predicated this motion on the ground that the evidence was insufficient to warrant submitting the case to a jury. No useful purpose would be gained by reiterating the voluminous evidence contained in the record. After a careful examination, we find ample evidence to sustain the charge and the lesser included offenses thereunder. (See *State v. Dill*, 182 Kan. 174, 175, 319 P. 2d 172; and cases cited therein.)

Defendant further contends that the court misled and confused the jury by instructing on murder in the first degree. A review of the record does not disclose that the court instructed on the crime of murder in the first degree. The court defined certain words such as "malice"—both "express" and "implied"—, "deliberate," and "premeditate." Defendant does not contend that the definitions are inherently wrong, but asserts that they should not have been given. We think it clear that the definitions were given to clarify

the meaning of, and the distinction between, murder in the second degree and manslaughter. All of the mentioned terms are included in the information and in the statute upon which the prosecution was founded. Even though the court defines terms which may not be involved in the crime charged or upon which conviction ensues, if the definitions thereof serve a purpose, such as helping the jury to understand the distinction between murder and manslaughter or the nature of the crime with which they are dealing, they are proper. Also, if the definitions are abstractly correct, a very definite and specific showing of prejudice must be made in order to render the instruction reversible error. (*State v. Bradford*, 169 Kan. 89, 91, 216 P. 2d 1020.)

Defendant contends next that the court erred in instructing the jury it could find the defendant guilty of manslaughter in the second degree. It is a well-established rule in this state that in a prosecution for homicide it is the court's duty to instruct not only on the offense charged but on the lesser offenses of which the accused might be found guilty upon the information and upon the evidence adduced, even though no request for such an instruction on such lesser offenses is made. (*State v. Smith*, 161 Kan. 230, 236, 167 P. 2d 594; *State v. Severns*, 158 Kan. 453, 458, 148 P. 2d 488; *State v. Gloyd*, 148 Kan. 706, 84 P. 2d 966.)

Manslaughter is one of the crimes arising from homicide, which is the killing of a human being. Homicide is manslaughter in the second degree (G. S. 1949, 21-411) when it is committed without a design to effect death, in the heat of passion, but in a cruel and unusual manner.

Defendant contends that the evidence did not justify the court's instructions on second degree manslaughter for the reason that the manner in which the injuries causing death were inflicted was not cruel and unusual. We held in *State v. Palmer*, 173 Kan. 560, 567, 251 P. 2d 225, that where the defendant was charged in an information with the crime of murder in the first degree for shooting and killing one Bradley, it was error for the court not to instruct on second degree manslaughter under the aforementioned statute. To the same effect, see *State v. Clark*, 69 Kan. 576, 584, 77 Pac. 287. The record in the instant case discloses ample evidence to justify the court's instructing on manslaughter in the second degree. The manner of the killing is an element of the offense and is a question of fact for determination by a jury. The jury did decide that the manner of the killing was both cruel and unusual. In this state

homicides are uncommon and it is not easy to define the usual manner in which unlawful killings are committed. In almost every case it must necessarily be a question for the jury. In this day of a more refined society, we cannot say that the treatment given deceased by the defendant was not cruel and unusual. Such killings rarely happen. Beating and kicking a man to death while he is in a helpless condition, with his hands handcuffed behind him, unable to defend himself, cannot be declared as a matter of law in this state to be neither cruel nor unusual.

It is further argued by defendant that the court erred in failing to give defendant's requested instruction on self-defense and his instruction relating to the cause of death. The record reveals that the trial court sufficiently covered both of defendant's requests and no error is made to affirmatively appear.

A review of the entire record reveals that defendant was granted a fair and impartial trial and was well represented by counsel at every stage of the proceedings. The record does not disclose any matter even approaching reversible error. The judgment is therefore affirmed.

It is so ordered.