No. 41,843

STATE OF KANSAS, *Appellee,* v. CLOYD E. BROOKS, *Appellant.*

(354 P. 2d 89)

Opinion filed July 14, 1960.

*Thomas E. Gleason,* of Ottawa, argued the cause, and *Douglas Gleason,* of Ottawa, and *Hollis B. Logan,* of Topeka, were with him on the briefs for appellant.

*Hugh H. Kreamer,* Assistant County Attorney, of Olathe, argued the cause, and *John J. Gardner,* County Attorney, of Olathe, and *John Anderson, Jr.,* Attorney General, and *Robert Hoffman,* Assistant Attorney General, of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, Cloyd E. Brooks, was convicted and sentenced on a charge of manslaughter in the fourth degree in violation of G. S. 1949, 21-420, resulting in the killing of three persons in a truck-automobile collision. He appeals from the overruling of his motion for a directed verdict, a new trial, and from the judgment.

There is no disagreement between the parties that the information charged the offense under G. S. 1949, 21-420, coupled with G. S. 1949, 8-537. The defendant concedes the information was properly drawn and complies with the rule set forth in *State v. Custer,* 129 Kan. 381, 282 P. 1071, but contends the evidence, when considered with the district court's instructions to the jury, fails to sustain his conviction of fourth degree manslaughter.

The particular stretch of U. S. Highway 69 in Johnson County, Kansas, where the collision occurred is a two-lane, standard-width concrete highway passing through the Blue River Hills area which is a very curving down-grade series of hills and curves located in the vicinity of the Little Blue River, and is commonly known to those who frequent it to be dangerous and hazardous. In that area northbound traffic encounters a banked curve to the west where the highway runs on a down-grade for about 600 to 800 feet then encounters a second curve to the north which is not banked.

On June 17, 1955, at approximately 5:00 o'clock in the morning the defendant was driving a truck and loaded semitrailer weighing from 30,000 to 40,000 pounds north through the area just described. He had driven the highway many times. A light rain was falling and the highway was wet. The defendant negotiated the first curve and in attempting to make the second curve he crossed the center line of the highway and collided with a southbound Chevrolet automobile in which three persons were riding. The force of the impact resulted in the truck and the car becoming a moving mass off the highway down into a ravine and up against some trees, causing the death of all of the occupants of the Chevrolet.

Three witnesses testified for the state. Two of them, Dr. John E. Johnson, the coroner of Johnson County, and Al Pack, a member of the Johnson County sheriff's patrol, were eyewitnesses to the collision. They were investigating a previous fatal highway accident

in the immediate vicinity and were seated in a patrol car parked off the right-hand side of the highway about 80 to 100 feet north of and facing the curve where the collision here involved occurred. Dr. Johnson testified that the point of impact was across the center line and in the west or southbound lane of the highway. Pack testified he noticed a southbound Chevrolet pass the patrol car; that it was traveling at a very slow rate of speed—between five and fifteen miles per hour—in its proper lane; that as it approached the curve he saw the defendant's truck coming down the hill traveling in a westerly direction before it entered the curve; that the truck did not make the curve but went straight on, crossing the center line, striking the Chevrolet, knocking it into mid-air and off the highway; that the impact occurred two feet within the west or southbound traffic lane; that he did not estimate the speed the truck was traveling but that "he (defendant) was traveling too fast for the road conditions to make the corner safely." In answer to whether the centrifugal force of the truck carried it across the center line Pack stated he was not qualified to estimate centrifugal force, but that he did believe "under the road conditions . . . the apparent speed was too great to make the corner." He further testified that the curve the defendant had negotiated was similar to the one where the collision occurred except the second curve was down hill from the first and the defendant's truck would have gained speed between the two curves, but the truck was not skidding. On redirect examination he testified over the defendant's objection that the truck was not passing any other vehicle proceeding in the same direction when the collision occurred and that the defendant's northbound lane was not blocked for any reason at the point of impact but that it was a clear, open highway on the curve.

The state's third witness was Frank B. Goodard, a State Highway patrolman. He testified he arrived at the scene of the accident at about 5:30 a. m. and took pictures of the vehicles and measurements of the area involved; that rain continued to fall before he took the pictures and measurements. However, there were some abrasions on the highway at the point of impact which looked like a tread mark of some sort—a wheel-made tread mark, which indicated that brakes had been applied although the skid marks were not "very lengthy." He stated that many times braked wheels do not skid enough to leave black rubber burns but will skid enough

to leave a shadow and that there was only a shadow in the pictures of the point of impact.

At the close of the state's evidence the defendant moved for a directed verdict and for discharge, which was overruled, and the defendant argues that was error.

We think the evidence was sufficient to prove a violation of G. S. 1949, 8-537 regulating driving upon the right side of the highway and of G. S. 1949, 8-531 relating to reckless driving. That driving on the left-hand side of the highway and reckless driving are misdemeanors needs no further statement. Misdemeanors are punishable by G. S. 1949, 8-5,125. The state's evidence was sufficient to show that the defendant's conduct was unlawful amounting to misdemeanors denounced by statute for the purpose of protecting human life and safety and that death would not have resulted except for his unlawful conduct. We think the district court did not err in overruling the defendant's motion for a directed verdict and for his discharge. See *State v. Custer,* 129 Kan. 381, 282 P. 1071; *State v. Gloyd,* 148 Kan. 706, 84 P. 2d 966; *State v. Phelps,* 153 Kan. 337, 110 P. 2d 755; *State v. Spohr,* 171 Kan. 129, 230 P. 2d 1013; *State v. Champ,* 172 Kan. 737, 242 P. 2d 1070, and *State v. Yowell,* 184 Kan. 352, 336 P. 2d 841.

Further complaint is made of the district court's instructions 3, 4 and 5, which read:

"INSTRUCTION No. 3.

"You are instructed that the law of Kansas in Section 21-420 provides: 'Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree.'

"INSTRUCTION No. 4.

"Since in Instruction No. 3 the phrase, 'manslaughter at the common law' has been used, it is necessary to define such expression, since the charge on which defendant is being tried in this case is that set out in our statute as shown in Section 21-420 and you are instructed that manslaughter at the common law is defined as the unlawful killing of another without malice, express or implied, which may be either voluntary under a sudden heat, or involuntary but in the commission of some unlawful act. The common law did not sanction the conviction of a man of manslaughter resulting from negligent conduct unless his conduct was accompanied by a wrong mental attitude having the qualities of recklessness; and to be reckless within the provisions of the definition, the conduct must be as to evince disregard of or indifference to consequences under circumstances involving danger to life or safety of others, al-

though no harm was intended. *Consequently, you will limit your consideration in this case to the alleged acts of negligence which have been shown, if you find any have been shown, brought about by the operation of the two motor cars, that is, by the defendant and by the deceased, under the instructions as herein given.*

"INSTRUCTION No. 5

"Culpable negligence, as that term is used in defining manslaughter in the fourth degree, as set out in these instructions, means an act or acts of reckless indifference to the rights and safety of others." (Emphasis supplied.)

The defendant argues the court's instructions limited the jury's consideration to the charge of culpable negligence rather than a violation of statutes enacted for the purpose of protecting human life and safety. In making the contention, the defendant emphasizes the last sentence of instruction No. 4 and states that a search of all the testimony reveals no act which could be considered as reckless or indifferent to the rights and safety of others as defined in the court's instructions. No complaint is made of other instructions, or of the instruction on the offense of negligent homicide as defined in G. S. 1949, 8-529. Although the jury had an opportunity to find the defendant guilty of the lesser offense it did not do so.

As held in *State v. Custer,* supra, and our other decisions, involuntary manslaughter is the killing of another unintentionally and without malice and results either from the commission of a lawful act or an unlawful act. If death resulted from negligent conduct in doing a *lawful act* it is necessary in order to constitute manslaughter that the conduct be reckless, that is, be such as to evince disregard or indifference to consequences, under circumstances involving danger to life and safety to others, although no harm was intended. On the other hand, if death resulted from *unlawful conduct* amounting to misdemeanors denounced by statutes *for the purpose of protecting human life and safety,* and the death would not have resulted except for the unlawful conduct, the killing would also be manslaughter at common law. Whether statutes are enacted and designed for the purpose of protecting human life and safety is a question of law for the courts to determine (*State v. Yowell,* 184 Kan. 352, supra).

While instruction No. 4 tended to intermingle the definitions of involuntary manslaughter, about which the defendant makes no complaint, we think it, particularly the last sentence, was not prejudicial to the defendant because in addition to requiring the state to prove beyond a reasonable doubt that the defendant's unlawful

conduct amounted to misdemeanors denounced by statutes which were designed for the purpose of protecting human life and safety and that death would not have resulted except from his unlawful conduct in violating G. S. 1949, 8-531 relating to reckless driving, and G. S. 1949, 8-537 relating to driving a vehicle on the right side of the highway, it further required the jury to find that in violating those statutes the defendant's conduct was such as to evince reckless indifference to the rights and safety of others amounting to culpable negligence as defined in instruction No. 5.

As previously indicated, what the defendant principally urges is that there is no evidence in the record which may be construed as reckless indifference to the rights and safety of others as necessarily inferred in the last sentence of instruction No. 4, and of culpable negligence as defined in instruction No. 5. In other words, what the defendant seeks is to have this court say as a matter of law that his conduct was not so reckless as to constitute culpable negligence. If that were the test of the defendant's guilt the evidence was ample to support the conviction. The record manifests that the defendant's conduct was of reckless indifference to the rights and safety of others and was such as to evince disregard or indifference of consequences, under circumstances involving danger of life and safety to others, although he intended no harm. The evidence was undisputed that the defendant was driving his truck in a light rain on a highway which was wet; that the truck and load weighed from 30,000 to 40,000 pounds and that he was proceeding at 35 to 45 miles per hour on a highway which he admitted he had driven many times and knew the area to be one of the most dangerous and hazardous in the state. It is obvious that when he reached the curve in question he was unable to make the turn, and proceeded straight ahead striking the Chevrolet automobile lawfully on its side of the highway, killing three persons. As indicated, the evidence tended to disclose that the offense charged was committed and that the defendant committed it, and from all the facts and circumstances the jury might have reasonably drawn an inference of guilt.

Other points have been raised by the parties but they are of no consequence and it would unduly extend this opinion to state and decide them.

We have thoroughly reviewed the record and find no reversible error. The judgment of the district court is affirmed.