No. 48,242

STATE OF KANSAS, *Appellee,* v. IVESTER JOHNSON, JR., *Appellant.*

(556 P. 2d 168)

Opinion filed November 6, 1976.

*Michael Lerner,* of Barnett & Lerner, Chartered, of Kansas City, Kansas, argued the cause, and *David J. Heath,* of the same firm, was with him on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant Ivester Johnson, Jr., appeals from a conviction by a jury of murder in the first degree. (K. S. A. 21-3401.) The victim was a three-month-old girl, Marchelle Johnson. It was undisputed that the child was not fathered by defendant, but he had married the child's mother before Marchelle was born and had signed her birth certificate as the father. Defendant knew he was not the child's father before the marriage was consummated.

The exact events leading up to the death of the child are not known and the state's case rests entirely on circumstantial evidence. The record discloses that on Sunday, October 13, 1974, Lee Ellen Johnson, the child's mother, had gone to the store, leaving the child in the care of defendant. She testified that when she left home the child was in a normal and healthy condition. When she returned from the store about one hour later, Mrs. Johnson went into the

room where the baby slept and, according to her, the baby was "just laying there with her head to the side." When she picked the baby up, she noticed its head was "swollen."

Marchelle was taken to Providence Hospital emergency room where she was examined by Dr. Andrew Myers. Dr. Myers testified that he responded to a "Code Blue" emergency and found the infant in dire condition. Despite his efforts to revive the child she died.

Dr. Angelo Lapi performed an autopsy on the deceased child. His external examination of the head indicated it had a "boggy" feeling and was swollen. There was discoloration of the left side of the chest and subtle bruises on both legs between the knees and ankles. In his internal examination of the head the doctor found a horseshoe-shaped fracture of the skull with numerous branch fractures. There was extremely severe subdural hemorrhage. He estimated the injuries were twelve to sixteen hours old, all inflicted at the same time. The injuries were so severe that no medical relief was possible. Cause of death was extensive brain injury due to multiple impacts to the head.

Dr. Lapi said the injuries were the result of multiple blunt impacts of considerable velocity and force to the head. When questioned by the prosecutor as to the cause, the doctor agreed the injuries could have been inflicted by taking the child by the legs and swinging her, causing the head to be repeatedly struck against a wall or similar obstruction. In his opinion such injuries could not have been caused by a baby falling out of bed, by a slip and fall, or by accidentally striking a door jamb.

Dr. Lapi's testimony was disputed by the first defense witness, Dr. John M. Nichols. Although he never examined the body, he stated the child's injuries could have been caused by a fall from bed, by a slip and fall, or by striking a door jamb. In his professional opinion the injuries could have been caused by a single blow which could have been either an accident or homicide.

Defendant took the stand in his own behalf. The thrust of his testimony was to deny ever injuring the baby in any way; but if he did, it was accidental. He testified that he took care of the baby on the day before her death while his wife was out. During this time defendant stated the child's head was struck on the kitchen door jamb as he carried her through the house. A few minutes later he dropped her when he slipped on a sheet. The day of the baby's death defendant was again left alone to take care of her.

When she woke up and started crying defendant took her out of her bed, laid her on his bed, changed her diaper, then got her bottle. According to defendant, she spit up the bottle, getting it on his pants. He went to the kitchen to get a towel and as he came out of the kitchen he heard a bump. The baby had fallen out of bed. He picked her up and put her to bed, whereupon she went to sleep. Shortly thereafter, her mother discovered her condition and took her to the hospital. Defendant denied striking, mistreating or harming the child in any way.

Defendant specifies several points on appeal. He first contends the trial court erred by refusing to give instructions on lesser included degrees of homicide. As his second point defendant contends the trial court erred in overruling his motion for acquittal. The thrust of his argument is that the circumstantial evidence presented did not or could not prove corpus delicti. Further, he argues circumstantial evidence is insufficient to sustain a murder conviction.

Considering defendant's arguments in reverse order, we find his second point to be without merit. It is a well established rule that circumstantial evidence can be used to prove any element of a crime (*State v. Rhoten,* 174 Kan. 394, 257 P. 2d 141; *State v. Dill,* 182 Kan. 174, 319 P. 2d 172; *State v. Crosby,* 182 Kan. 677, 324 P. 2d 197), and can sustain a conviction of even the gravest offense. (*State v. Morton,* 217 Kan. 642, 538 P. 2d 675; *State v. Ritson,* 215 Kan. 742, 529 P. 2d 90; *State v. Hale,* 207 Kan. 446, 485 P. 2d 1338.)

When considering an appeal challenging the sufficiency of circumstantial evidence to sustain a conviction, this court is limited to determining whether there was a factual basis for a reasonable inference of guilt. (*State v. Sparks,* 217 Kan. 204, 208, 535 P. 2d 901, and cases cited therein.)

Defendant argues that corpus delicti has not been established because the circumstantial evidence does not eliminate the possibility of accidental death; thus, the evidence is susceptible to a hypothesis of innocence. His argument is essentially the same as the defendant's argument in *Sparks.* In that case the defendant was convicted of second degree murder for the death of his two-year-old stepdaughter. The evidence adduced at trial revealed her to be a "battered child," her demise caused by severe head injuries. The defendant alleged the state had failed to establish a corpus delicti. Summarizing and responding to the defendant's argument, we stated:

"In all of his points concerning sufficiency of the evidence, defendant relies upon *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846. Based on the decision in *Doyle* defendant argues the corpus delicti has not been proved since the evidence is susceptible to a construction which will prove innocence as well as guilt. Defendant's interpretation of *Doyle* is correct, but the case is clearly distinguishable from that at bar. In *Doyle* the state was required to exclude, by evidence, death by accident or suicide since the circumstances there pointed no more strongly to criminal homicide than to death by accident or suicide. In *Doyle* the dead man was found slumped over the steering wheel of his own automobile with a bullet wound in his right temple. A pistol lay beside his right hand on the front seat of the automobile. There was no evidence, circumstantial or otherwise, to indicate the accused was ever at the scene of the crime. In the instant case direct evidence placed defendant in physical contact with LaDonna, and established the cause of death as multiple bruises or traumas to the head. Obviously, LaDonna's injuries did not result from self-inflicted blows or attempted suicide." (pp. 208, 209.)

Because of the factual similarity between *Sparks* and the instant case, we deem *Sparks* to control on this issue. Here, as in *Sparks*, evidence placed the victim in the custody of defendant, and established the cause of death as a massive head injury. Although experts disputed the manner in which the injuries occurred, the jury apparently believed there was substantial credible evidence that the injuries could not have been accidental. Obviously, Marchelle's injuries did not result from self-inflicted blows or attempted suicide. (See, also, *State v. Pyle*, 216 Kan. 423, 532 P. 2d 1309; *Connell v. State*, 39 Ala. App. 531, 105 So. 2d 695.)

Defendant claims the trial court erred in not instructing on lesser included offenses of first degree murder. The record reveals defendant made a timely request for instructions on second degree murder and voluntary and involuntary manslaughter which was denied. We think defendant's argument has merit and we should remand for a new trial.

K. S. A. 21-3107 (3) provides that in cases where the crime may include some lesser crime it is the duty of the court to instruct the jury, not only as to the crime charged, but also as to all lesser crimes of which the defendant might be found guilty under the evidence presented at trial. This is true even in the absence of a request for instructions by the defense counsel or prosecutor. (*State v. Boyd*, 216 Kan. 373, 532 P. 2d 1064; *State v. Clark*, 214 Kan. 293, 521 P. 2d 298; *State v. Warbritton*, 211 Kan. 506, 506 P. 2d 1152, and cases cited therein.) While the rule is now statutory, it is well embedded in our decisional case law. In *State v. Cunningham*, 120 Kan. 430, 243 Pac. 1006, this court stated:

"It is made the duty of the court in charging the jury, to state to them all matters of law which are necessary for their information in giving their verdict. (R. S. 62-1447.) The rule in homicide cases has been repeatedly declared that the court should instruct the jury not only on the evidence adduced by the prosecution in support of the higher offense, but also upon the whole evidence and especially upon the lower degrees of the offense, if there is substantial evidence applicable to the lower degrees. The instructions should cover every issue or theory in the case which has support in the evidence. Whether the evidence tended to support the lower degrees of the offense appears to the court to be weak and unsatisfactory, the accused is nevertheless entitled upon request to have the issue and the effect of the evidence submitted to the jury. . . ." (p. 431.)

The reason for the rule was set out in the case of *State v. Buffington,* 66 Kan. 706, 72 Pac. 213:

"The defendant in a criminal prosecution has a right to have the court instruct the jury in the law applicable to his contention, if it be supported by substantial evidence, however weak, unsatisfactory or inconclusive it may appear to the court. To refuse so to instruct the jury would be to invade its province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of an inferior degree of the offense charged, but whether there is any substantial evidence tending to prove an inferior degree of the offense. If there is, then the question of such degree should be submitted to the jury. The unsupported testimony of the defendant alone, if tending to establish such inferior degree, is sufficient to require the court so to instruct." (pp. 709, 710.)

The necessity of complete instructions is particularly true in homicide cases. (See, *State v. Clark,* supra; *State v. Roberson,* 210 Kan. 209, 499 P. 2d 1137; *State v. Williams,* 182 Kan. 468, 473, 322 P. 2d 726; *State v. Fouts,* 169 Kan. 686, 221 P. 2d 841; *State v. Smith,* 161 Kan. 230, 236, 167 P. 2d 594.)

In *State v. McAnarney,* 70 Kan. 679, 79 Pac. 137, an opinion written by Chief Justice Johnston, it was stated:

"In a prosecution for murder, where there is no direct evidence of the manner of the killing, and the evidence introduced against the defendant is wholly circumstantial, and open to the inference by a jury that the offense committed may have been among the several lower degrees of that charge, it is the duty of the court, upon request, to instruct the jury respecting all the degrees of homicide, it being the province of the jury, and not of the court, to determine the degree, if any, of which the defendant is guilty." (Syl. 1.)

We will not engage in a discussion of the evidence, but we believe the jury, as the triers of fact, might reasonably draw inferences to convict on any of the lesser included degrees of homicide. For this reason, we believe that on remand the trial court

should instruct on first degree murder (*State v. Severns,* 158 Kan. 453, 455-56, 148 P. 2d 488); second degree murder (*State v. Sparks,* supra at 209); voluntary manslaughter (*State v. Clark,* supra at 298; *State v. Stafford,* 213 Kan. 152, 166, 515 P. 2d 769; *State v. Johnson,* 201 Kan. 126, 130-31, 439 P. 2d 86); and involuntary manslaughter (*State v. Gregory,* 218 Kan. 180, 182-83, 542 P. 2d 1051; *State v. Childers,* 217 Kan. 410, 416, 536 P. 2d 1349; *State v. Wilson,* 215 Kan. 437, 439, 524 P. 2d 224; *State v. Roberson,* supra; *State v. Brooks,* 187 Kan. 46, 50, 354 P. 2d 89; *State v. Severns,* supra at 457-59).

Defendant also challenges the admissibility of the five-page coroner's report prepared following Marchelle's death. The trial court admitted the first page of the report, pursuant to K. S. A. 19-1034, but excluded the last four pages. Defendant complains of the first page because it contains hearsay statements. We have examined the coroner's report and agree the first page does contain hearsay matter. On remand, we conclude it would be better practice to excise the hearsay information contained on the first page of the coroner's report and admit the remainder of the report in its entirety.

For the reasons set forth, the case is reversed and remanded for a new trial.

FATZER, C. J., concurring and dissenting: I agree the evidence would support an instruction on murder in the first degree and in the second degree, but in view of the violence spent upon the three-month-old child, I cannot agree the court should have instructed on voluntary manslaughter and involuntary manslaughter.