No. 31,205

THE STATE OF KANSAS, *Appellee*, v. DON FAULKNER, *Appellant*.

(33 P. 2d 175.)

Opinion filed June 9, 1934.

*Walter L. Bullock*, of Dodge City, and *John A. Etling*, of Kinsley, for the appellant.

*Roland Boynton*, attorney-general, *Everett E. Steerman*, assistant attorney-general, *J. V. Severe*, county attorney, and *C. C. Birney*, of Dodge City, for the appellee; *W. C. Gould* and *G. R. Gould*, both of Dodge City, of counsel.

The opinion of the court was delivered by

HUTCHISON, J.: In this action the defendant appeals from a conviction of and sentence for cheating and defrauding another of $160.

Among the specifications of error are that the information does not charge a crime in that it does not charge any false pretense to an agent or any one in procuring the money, and that there is a variance between the allegations of the information and the proof as to the person or party defrauded. Omitting the first and formal part of the information, the rest of it is as follows:

". . . One Don Faulkner did then and there unlawfully, feloniously and with intent to defraud one R. C. Davidson, secure approximately one hundred grain checks from the manager of a grain elevator owned by said R. C. Davidson, said checks purporting to be in payment for wheat and said checks amounting to approximately $6,000, but in fact delivered no wheat or other grain for said checks; that after receiving said grain checks, he, the said Don Faulkner, cashed them at various places and secured the money on said checks amounting to approximately $6,000, which money was the property of R. C. Davidson; that by reason of the facts aforesaid, said Don Faulkner did then and there unlawfully, feloniously, willfully and knowingly, cheat and defraud said R. C. Davidson of the sum of $6,000.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

The only reference therein to any agent or third person is to the securing of checks from the manager of a grain elevator. The false and fraudulent representations mentioned in the information were directed to the intent to defraud Davidson, who is named in the information, and not any agent, although such a crime might be consummated by making such false or fraudulent representations and pretenses to an agent of the owner.

The county attorney in drawing this information evidently did not have in mind such a state of facts, and the evidence shows plainly how futile and incorrect such an allegation would have been, when the agent was, apparently, under the evidence, as deep, if not deeper, in the plan of using false or fraudulent representations and pretenses to defraud Davidson as was this defendant. The false and fraudulent pretenses under this information were the grain checks signed by the agent and indorsed by the defendant and presented at the bank to obtain the money thereon from Davidson.

The charge was made under R. S. 21-551. The portions applicable to this charge are as follows:

"Every person who, with intent to cheat or defraud another, shall, designedly, by means of any false token or writing, or by means or by use of any trick or deception or false or fraudulent representation or statement or pretense . . . obtain from any person any money, personal property," etc.

Appellant cites *State v. Metsch*, 37 Kan. 222, 15 Pac. 251, to show that the state, as in this case, has failed to establish any deceit upon the agent issuing the checks, but, as stated above, the false pretense and deceit in this case is on Davidson, and not on the agent. In the case above cited, the failure was in proving any false representations as to mortgage A on which only the prosecution relied, while

evidence of false statement was given concerning mortgages B and C. The court held in that case that the false pretenses relied upon as to mortgages B and C would not support a conviction for obtaining money by false pretense on mortgage A.

Appellant also cites *State v. Johnson*, 109 Kan. 239, 199 Pac. 104, insisting that the crime attempted to be proved in the case at bar was not that of making false representations and pretenses to defraud another, but aiding and abetting the manager of the grain company in the crime of embezzlement. The facts in the case at bar are so different as to make the cited case inapplicable. There the defendant was the trusted officer of the company, with its funds in his hands, which he appropriated to his own use.

As to the variance between the name of the party cheated or defrauded, appellant calls attention to the fact that R. C. Davidson is named as such in the information, while the pretended checks were given in the name of Davidson Grain Company, and they were indorsed by defendant and cashed at the bank the same as were genuine checks of the company given for the purchase of grain. The testimony of R. C. Davidson did away with this possible variance when he said he had a grain business in Dodge City, Kan., and he was operating the business during the year of 1930 and up until February 17, 1931.

Appellant insists that the trial court erred in not sustaining his motion for a directed verdict at the close of the case on the part of the state. The evidence of the state was confined almost entirely to the testimony of the sheriff, the brother of the county attorney, Mr. Davidson and a few others, giving the statements of the defendant after his arrest in admitting and confessing the receiving by him of numerous checks of the grain company from the manager, after he had ceased hauling in and delivering his own wheat from 320 acres, taking the same to a bank and getting the cash for them and dividing it with the manager, retaining for himself only about $5 or $10 out of each check. These checks bore the followng statements: "This check is for grain only, and must be fully made out before being cashed"; "Grain check"; also, immediately after the amount of the check, "For one wagon load of wheat."

The false pretenses were in presenting such checks to the bank to receive the money thereon from Davidson's funds when it was known to the defendant that no wheat had been delivered for the

same. At the time of making these admissions a list of all the checks issued to him that season, good and bad, was shown to him, and he drew a pencil mark across the list showing where the checks for actual delivery ended and the other checks began to be issued, determining the same by date of last delivery. The checks were, on the trial, introduced in evidence. The list of them with the pencil mark thereon was offered, but not admitted. It was, however, in the hands of all or nearly all the witnesses when they were on the witness stand testifying as to what the defendant had said in making his admissions.

The passing of such checks, containing such false representations, to obtain through the bank the money thereon from Davidson certainly meets the requirements of the statute above quoted. A practical application of this statute is given in *In re Snyder, Petitioner, etc.*, 17 Kan. 542, as follows:

"It is not necessary, to constitute the offense of obtaining goods by false pretenses, that the owner has been induced to part with his property solely and entirely by pretenses which are false; nor need the pretenses be the paramount cause of delivery to the prisoner. It is sufficient, if they are a part of the moving cause, and, without them, the defrauded party would not have parted with the property." (Syl. ¶ 3. See, also, *State v. McCormick*, 57 Kan. 440, 46 Pac. 777.)

We find no error in overruling defendant's motion for a directed verdict.

The defendant did not introduce any evidence, and the case was submitted to the jury on instructions, with the result above noted.

Another error assigned by appellant was in admitting the checks in evidence in connection with the list of them, which was never formally admitted, and later permitting the jurors to examine the checks and the list, exhibit No. 1, in the court room in the presence of the court and counsel on both sides after they had retired to the jury room. It is claimed that without such examination the jury had no basis for the amount of $160 named in the verdict. We see no error in admitting the checks fully identified in evidence, nor is our attention directed to any good reason why the list of checks, which was in the hands of, and explained by, nearly every witness, should not have been admitted, but of course, since it was not admitted in evidence it should not have been submitted to the jurors for inspection after they had retired to deliberate upon their verdict, even in the court room. If there was no other evidence before the

jury to reach the verdict it did, the situation might be more serious, but there was evidence of an approximate date when the defendant ceased hauling in his own wheat, and one of the witnesses stated from the examination of the checks and list before him the amount received by this defendant on these bad checks, from his own admission, as something like $400. It is very apparent that all parties, including the court, treated the list, exhibit No. 1, as if it had been admitted, but no such order now seems to have been made. If it was an error to permit the jurors to examine this list and the checks in the court room, after it had retired to deliberate, it was certainly not a prejudicial error, because, as stated above, there was other evidence supplying, perhaps less definitely, the same information there furnished.

R. S. 62-1718 provides:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (See *State v. Morton,* 59 Kan. 338, 52 Pac. 890; and *State v. Hoerr,* 88 Kan. 573, 129 Pac. 153.)

This could at most be a technical error and not such as would affect the substantial rights of the defendant, and was in no way prejudicial.

Other assignments of error considered, and held none of those so assigned to be reversible error.

The judgment is affirmed.