No. 42,500

STATE OF KANSAS, *Appellee,* v. ROBERT M. McNICHOLS, *Appellant.*

(363 P. 2d 467)

Opinion filed July 8, 1961.

*Joseph P. Jenkins,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Norma Braly, Barton P. Cohen, Jacob F. May, Jr.,* and *Frederick K. Cross,* all of Kansas City, were with him on the brief for the appellant.

*Hugh H. Kreamer,* County Attorney, argued the cause, and *William Ferguson,* Attorney General, and *Robert Hoffman,* Assistant Attorney General, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant was charged with manslaughter in the fourth degree. (G. S. 1949, 21-420.) The information alleged in substance that the defendant drove his automobile into an intersection without first stopping at the stop sign controlling his entrance thereto, thus causing a collision with another vehicle entering the intersection from a different direction, killing two children who were passengers in the defendant's vehicle as a result thereof.

Trial was had before a jury which returned a verdict of guilty. The defendant was sentenced to six months in the county jail, from which judgment and sentence appeal was duly perfected to this court.

The questions presented are (1) whether the trial court properly instructed the jury; and (2) whether the jury was guilty of misconduct which prejudiced the substantial rights of the appellant.

Except as hereafter noted the facts giving rise to this action are not in dispute.

The appellant is thirty-four years of age and resides in Johnson County, Kansas. He is married and the father of two children. Ernest Roberts, the father of the two deceased children, and the appellant are good friends and reside next door to each other. Their families visit back and forth.

On September 11, 1960, both families met at a Go-Kart track in Johnson County where they enjoyed a picnic. At approximately 5:00 p. m., Ernest Roberts and two of his children, Randy and Thomas, left with the appellant who was driving a Nash Rambler station wagon. One Go-Kart was tied to the top of the station wagon with its wheels resting on the roof. The second Go-Kart

was placed in the back seat where the two children were sitting, one on each side of the Go-Kart.

The appellant was proceeding north on Morse Road toward the intersection of 111th Street. Both of the intersecting roads were black-top but Morse Road was more heavily covered with small gravel or chat. Morse Road is controlled by a stop sign at the intersection but 111th Street is not. At the time of the accident, approximately 350 feet south of the intersection in question on Morse Road was a "Stop Ahead" sign. There was also a stop sign at the southeast corner of the intersection controlling traffic on Morse Road proceeding north. West of the intersection on 111th Street is an "Intersection Ahead" or "Dangerous Intersection" sign. The field on the southwest corner of the intersection had a growing crop of sorghum which obstructed the view.

Both roads were zoned for a maximum speed of 60 miles per hour, and according to Roberts' testimony they were proceeding northward on Morse Road at approximately 45 to 50 miles per hour when Roberts, who was trying to light a cigarette, glanced up to see the stop sign out of the corner of his eye and the top of the Riggs car approaching from the west on 111th Street. Roberts started to say "Bob, here comes a car," but only got out "Bob" when the collision occurred.

The impact took place slightly south of the center of the intersection with the Riggs car leaving skid marks measuring 37 feet and the appellant's car leaving skid marks measuring 17 feet up to the point of impact. The appellant's vehicle struck the right side of the Riggs car with its left front fender.

As a result of the accident the appellant, Thomas Roberts and Randy Roberts were thrown from the station wagon. Thomas died at the scene, and Randy died enroute to a hospital. The appellant was knocked unconscious and has no recollection of the accident or the events immediately preceding it.

The only discrepancy in the evidence worthy to note is the speed at which the appellant drove into the intersection. Harold R. Riggs, driver of the other vehicle involved in the collision, said it appeared to him as though the appellant's car was coming at perhaps 70 miles per hour. Mr. Riggs testified that he reduced his speed from approximately 40 to approximately 35 miles per hour at the intersection, but that his speed was slightly less than 35 miles per hour at the time of the impact.

The allegations of the information pertinent to this appeal charged that the appellant on or about the 11th day of September, 1960, in Johnson County "did then and there Unlawfully, feloniously, willfully and by his act, procurement and culpable negligence, kill two human beings," in negligent disregard of the lives and property of other persons.

The appellant contends the court improperly instructed the jury with respect to the elements of manslaughter, in the fourth degree, and complains particularly of Instruction No. 8 given to the jury.

Material to a proper disposition of this point are the following instructions given by the trial court:

"INSTRUCTION No. 3.

"You are instructed that the law of Kansas in Section 21-420 provides: 'Every other killing of a human being, *by the act, procurement or culpable negligence of another, which would be manslaughter at the common law,* and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree.' [Emphasis added.]

"INSTRUCTION No. 4.

"Culpable negligence, as that term is used in defining manslaughter in the fourth degree, as set out in these instructions, means an act or acts of reckless indifference to the rights and safety of others.

"INSTRUCTION No. 5.

"You are further instructed that the mere fact you may believe from the evidence beyond a reasonable doubt that the defendant was operating his motor vehicle in a culpably negligent manner, such is not sufficient to sustain a conviction of manslaughter in the fourth degree. There must be, in addition, a causal connection between the acts *or the culpable* negligence of the defendant and the death of the persons. In other words, the acts or culpable negligence of the defendant must be the proximate cause of the death of the person.

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred. Unless you find beyond a reasonable doubt that the culpable negligence of the defendant was the proximate cause of the death of the person, then you will acquit the defendant of the charge of manslaughter in the fourth degree.

"INSTRUCTION No. 6.

"You are further instructed that the laws of Kansas, Section 8-568 of the 1959 Supplement to the General Statutes of Kansas for 1949, provide in part:

" 'Except when directed to proceed by police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop

sign shall stop at a point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway, before entering the intersection.'

"INSTRUCTION No. 7.

"You are further instructed that Section 8-568 of the 1959 Supplement to the General Statutes of Kansas for 1949 is a statute enacted for the purpose of protecting human life and safety.

"INSTRUCTION No. 8.

"You are further instructed that if you find from the evidence beyond a reasonable doubt that the defendant drove his automobile into 111th Street at its intersection with Morse Road in Johnson County, Kansas, without first stopping said automobile at the lawfully erected stop sign at the Southeast corner of the intersection of 111th Street and Morse Road and in violation of Section 8-568 and that Randy Roberts and Thomas Roberts died as a proximate result of said unlawful conduct, the defendant is guilty of manslaughter in the fourth degree."

The trial court then instructed that the charge in the information contained the lesser offense of negligent homicide, which was defined, and it gave other appropriate instructions concerning which no complaint is made.

It is the appellant's position that Instruction No. 8 should not have been given because it is inconsistent with many of the principles laid down in *State v. Custer*, 129 Kan. 381, 282 Pac. 1071. It is argued the holding in *Custer* did not intend the result reached in this case; that the jury, in effect, as instructed were told to return a verdict of guilty—that violation of the statute was manslaughter in the fourth degree if death resulted as the proximate result thereof.

The appellant contends later cases relying upon *State v. Custer*, supra, do not present a consistent pattern. It is argued later cases had factors present other than a mere violation of a statute designed for the purpose of protecting human life and safety. (Citing, *State v. Pendleton*, 144 Kan. 410, 61 P. 2d 107; *State v. Gloyd*, 148 Kan. 706, 84 P. 2d 966; *State v. Phelps*, 153 Kan. 337, 110 P. 2d 755; *State v. Spohr*, 171 Kan. 129, 230 P. 2d 1013; *State v. Gibler*, 182 Kan. 578, 322 P. 2d 829; and *State v. Yowell*, 184 Kan. 352, 336 P. 2d 841.)

The appellant argues the type of conduct which seems to be the correct basis for a manslaughter conviction is illustrated in *State v. Townsend*, 146 Kan. 982, 73 P. 2d 1124, which involved driving at high speed under the influence of intoxicating liquor, and driving crosswise to the highway into the path of an oncoming vehicle. Cases inconsistent with the appellant's theory of manslaughter in

the fourth degree are criticized and cited as throwing confusion into the law. We do not think the law to be in a state of confusion. In *State v. Champ,* 172 Kan. 737, 242 P. 2d 1070, it was said:

". . . Since the decision in *State v. Custer,* supra, it is no longer an open question in this state as to what constitutes manslaughter at common law." (p. 739.)

The last case on the subject, *State v. Brooks,* 187 Kan. 46, 354 P. 2d 89, clearly construed the *Custer* case in the following language:

"As held in *State v. Custer,* supra, and our other decisions, involuntary manslaughter is the killing of another unintentionally and without malice and results either from the commission of a lawful act or an unlawful act. If death resulted from negligent conduct in doing *a lawful act* it is necessary in order to constitute manslaughter that the conduct be reckless, that is, be such as to evince disregard or indifference to consequences, under circumstances involving danger to life and safety to others, although no harm was intended. On the other hand, if death resulted from *unlawful conduct* amounting to misdemeanors denounced by statutes *for the purpose of protecting human life and safety,* and the death would not have resulted except for the unlawful conduct, the killing would also be manslaughter at common law. Whether statutes are enacted and designed for the purpose of protecting human life and safety is a question of law for the courts to determine (*State v. Yowell,* 184 Kan. 352, *supra*)." (p. 50.)

The decisions following *State v. Custer,* supra, under G. S. 1949, 21-420, defining manslaughter in the fourth degree, clearly indicate two types of conduct which would be manslaughter at the common law. The instructions given by the court in the instant case correctly give recognition to such interpretation of the statute. It is sufficient to sustain a conviction under 21-420, *supra,* that the person charged cause the death of another by unlawful conduct amounting to a misdemeanor denounced by statute for the purpose of protecting human life and safety. Under such circumstances, where the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law. Violation of G. S. 1959 Supp., 8-568, amending the original act, is denounced as a misdemeanor by G. S. 1949, 8-503, and was clearly enacted for the purpose of protecting human life and safety.

The crucial language in 21-420, *supra,* is worded in the alternative —"by his act, procurement *or* culpable negligence." Therefore, it is unnecessary to have "procurement" or "culpable negligence" to sustain a conviction for manslaughter in the fourth degree where the *unlawful* act would be manslaughter at the common law.

While the language used in the information in the case at bar

is worded in the conjunctive—"by his act, procurement *and* culpable negligence," and not in the alternative as worded in the statute, the variance is immaterial. It cannot be said the substantial rights of the appellant were prejudiced because he was charged with both types of conduct denounced in 21-420, *supra*, which would be manslaughter at the common law. (See, G. S. 1949, 62-1011; *State v. Champ*, supra; and *State v. Brooks*, supra.)

In the last paragraph of *State v. Custer*, supra, the court said:

"The views which have been expressed will not require any change in the manner of pleading manslaughter. Paradoxical as it may seem, manslaughter committed by act, procurement or culpable negligence, which would be manslaughter at common law, is a statutory crime, and the information may charge killing by unlawful act, or by culpable negligence, stating the facts." (p. 395.)

If there appears to be an inconsistency in the cases, it is attributable to the fact that the killing by *unlawful* act denounced in 21-420, *supra*, may also, depending on the facts, be killing by the type of conduct described as *culpable negligence* in such statute. It may have been the intention of the county attorney who filed the information in the instant case to charge the appellant with both types of conduct by using the conjunctive in the information.

The trial court did not err in giving Instruction No. 8 to the jury.

The appellant contends the jury was guilty of misconduct which prejudiced his substantial rights.

At the hearing on the motion for a new trial five jurors appeared in response to subpoenas and by their testimony established that most of the jurors had consulted dictionaries at their homes, during a recess until the following day, to ascertain the meaning of the word "culpable" which appeared in the court's instructions.

Prior to the recess in which the jurors resorted to the dictionary, and during their deliberations, the jury sent two questions to the court. One read as follows:

"Does an act of culpable negligence have to be involved to bring a conviction of 4th degree manslaughter?"

The foregoing question indicates the jury was confused by the last sentence of Instruction No. 5.

The trial judge told the jury they could find the answer by reading all the instructions pertaining to manslaughter in the fourth degree.

Some of the jurors indicated, after following the court's instruction in this respect, the meaning of the word "culpable" was not clear in their minds; thus indicating they erroneously felt the answer to the above question was in the affirmative.

It was admitted there was discussion in the jury room concerning the various meanings obtained by reading dictionaries. One of the definitions given in Webster's Unabridged Dictionary was written on a piece of paper and returned to the jury room. It was: "deserving of blame or censure." Another testified he remembered the definition of the word to be "worthy of blame, along those lines."

One juror testified the dictionary definition "deserving of blame or censure" satisfied his own mind, at least, he was thinking the same as the instructions instructed him. (See Instruction No. 4.)

It is the appellant's contention the dictionary cannot usurp the court's duty and prerogative to instruct a jury in all respects. It is argued the dictionary definition is not the accepted legal definition of the word "culpable." *State v. Custer,* supra, is cited where the court discussed the dictionary definition of the word "culpable" in the phrase "culpable negligence."

G. S. 1949, 62-1718, provides that on appeal the court must give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties.

The state concedes the jury was guilty of misconduct and recognizes it has the burden of establishing that the substantial rights of the appellant have not been prejudiced.

Cases in which the jurors went beyond the evidence submitted in court to determine certain questions, and in which a new trial was granted are: *State v. Lantz,* 23 Kan. 728; *State v. Clark,* 34 Kan. 289, 8 Pac. 528; *State v. McCormick,* 57 Kan. 440; 46 Pac. 777; and *State v. Hanes,* 166 Kan. 271, 200 P. 2d 317. Other cases in which a new trial was not granted are *State v. Schaben,* 69 Kan. 421, 76 Pac. 823; *State v. Evans,* 90 Kan. 795, 136 Pac. 270; and *State v. Faulkner,* 139 Kan. 665, 33 P. 2d 175, thus indicating that each case must be considered upon its own particular set of facts and circumstances.

In this state it is proper to instruct jurors that they have the right to use that knowledge and experience which they possess in common with men in general. The meaning of words in the English language is ordinarily a matter concerning which the jurors have common knowledge.

The word "culpable" was used in the trial court's instructions numbered 4 and 5, and it was used only in connection with the phrase "culpable negligence," which was defined in Instruction No. 4.

A definition of the word "culpable" was not given by the court, and obviously the ordinary meaning of the word in the dictionary

would not necessarily define "culpable negligence." The jury was therefore ,inquisitive, no one knowing the ordinary meaning of the word, to find its definition. An understanding of this word, as we read instructions numbered 4 and 5, would better enable the jurors to understand the court's definition of "culpable negligence" given in Instruction No. 4.

Furthermore, the jurors were not required under the evidence to consider "culpable negligence" at all to find the appellant guilty of manslaughter in the fourth degree, but they were apparently confused by the last sentence of Instruction No. 5. Under these circumstances it is apparent from the evidence and the verdict that the jury found the appellant guilty of both types of conduct denounced as manslaughter in the fourth degree under 21-420, *supra*.

Upon all the facts and circumstances presented by the record in this case, we do not think the substantial rights of the appellant have been prejudiced by the misconduct of the jury.

The judgment of the lower court is affirmed.

ROBB, J., dissents from paragraph No. 2 of the syllabus and the corresponding portions of the opinion.