No. 45,047

STATE OF KANSAS, *Appellee,* v. RICHARD L. SCOTT, *Appellant.*

(439 P. 2d 78)

Opinion filed April 6, 1968.

*W. C. Jones,* of Olathe, argued the cause and was on the brief for the appellant.

*Gerald E. Williams,* Assistant County Attorney, argued the cause, and *Robert Londerholm,* Attorney General, and *James W. Bouska,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, C. J.: Defendant appeals from a conviction of manslaughter in the fourth degree as defined by K. S. A. 21-420.

The death in question resulted from an intersection collision of two motor vehicles—one of which was driven by defendant. The deceased was a passenger in the other vehicle. The information—as here material—charged that on or about November 15, 1966—

". . . one Richard L. Scott did then and there Unlawfully and feloniously by his act, kill a human being, to-wit: Maureen M. Cowden; said act consisting of driving and operating an automobile upon the public highway

and failing to yield the right of way to an oncoming vehicle, which resulted in his vehicle striking the automobile in which deceased was riding; and by his failure to yield the right of way did cause his vehicle to strike the vehicle in which the deceased was riding with great force and violence and as a result thereof, the deceased received bodily injuries which were the proximate cause of her death, which death would not have resulted except for the said acts of the defendant and which killing was not excusable or justifiable."

The statute involved in this matter, and which requires a driver to stop or yield the right of way, is K. S. A. 8-552 (b). As here material, it provides that every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by G. S. 1949, 8-568 as amended, and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard, but that said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding.

A jury was waived and trial was by the court. Prior to the introduction of evidence the court made an observation to the effect that the basis of the charge was that defendant failed to yield the right of way to an oncoming vehicle—such violation of the statute, which was 'designed for the protection of human life and property—being a misdemeanor, and that the death resulted as the proximate result of defendant's failure to yield the right of way to the oncoming vehicle.

There appears to be very little dispute as to just what happened.

On the morning in question Mrs. Leona Weber was driving her car in a westerly direction on K-10 highway. Three ladies—including Mrs. Maureen M. Cowden—were with her. They were on their way to Lawrence. The weather and highway were clear and the car was traveling about 45 to 50 miles per hour—which was within the posted speed limit.

Also on this morning defendant was driving a truck in a northerly direction on Renner Road. When he came to the intersection with K-10 highway he stopped at a stop sign and then proceeded into the intersection. A collision of the two vehicles resulted—the point of impact being in the west-bound traffic lane 3⅓ feet north of the center line of K-10 highway. There were "scuff marks" in the south lane of the highway made by defendant's rear tire. Apparently the impact was a glancing rather than a broad-side blow—the point of

impact on the Weber car being on the left front fender 18 to 20 inches in front of the left front door, and that on the defendant's truck being at the "right front corner." The head lights on defendant's truck were not broken. The Weber car was "rolled" and turned over two or three times. Mrs. Cowden sustained numerous injuries and was dead on arrival at a hospital.

Mrs. Weber testified that she had driven the highway many times; she did not recall a warning sign east of the intersection; there was nothing to interfere with her vision at the intersection, and her recollection "of the accident is I did not see the young man" —meaning the defendant.

A passenger in the Weber car testified that she glanced up just seconds before the collision and saw the truck; she did not know its speed, and immediately following the accident Mrs. Weber said "Was it my fault?"

An eye witness testified that defendant stopped at the stop sign and then "came on out on the highway—pretty fast." The defendant told him that he did not see the Weber car.

A highway patrolman arrived at the scene shortly after the accident. He testified to the points of impact above related. He also stated that at a point east of the intersection on K-10 highway there was a warning sign reading "50 miles per hour." He quoted defendant as saying that as he was going north on Renner Road he stopped at the stop sign "but failed to see the Weber car." The view through a portion of the right window of the truck was partially obscured by a piece of plastic which had been put on it.

At the conclusion of the state's evidence defendant's motion for a directed verdict was overruled.

A commercial photographer, called by defendant, testified that he had taken pictures of the intersection and had made tests of westbound cars, and that due to an incline on K-10 highway east of the intersection a "blind spot" is created which momentarily hides approaching cars from view.

A car-body repairman testified as to the point of impact on the vehicles as above related.

Several character witnesses testified that defendant's reputation for truth and veracity was good.

Defendant, 19 years of age, had worked for his father in the interior decorating business following his graduation from high school. He testified that on the morning in question he loaded

some debris in the truck to haul to the dump. As he approached the intersection he stopped at the stop sign on Renner Road. He looked east and west and saw no oncoming cars or hazards such that would not allow him to cross the highway. He then proceeded into the intersection at about 10 miles per hour and at about the time the front of his truck was across the center line of K-10 highway he first saw Mrs. Weber's car approaching from the east.

At the conclusion of the trial defendant was found guilty of manslaughter in the fourth degree as charged. A motion for a new trial was overruled and defendant has appealed.

It first is contended the trial court erred in failing to make findings of fact and conclusions of law as directed by Rule No. 116 of this court (197 Kan. LXXIII) in all contested matters submitted to a judge without a jury. The contention is without merit. Notwithstanding the reference in the rule to K. S. A. 60-252, we hold that the rule does not apply to the trial of criminal charges. Cases involving the duty to make findings and conclusions pursuant to Rule No. 121 (j) (197 Kan. LXXIV) are not in point. Subdivision (a) of that rule states that a proceeding under K. S. A. 60-1507 is an independent civil action. K. S. A. 60-402, also cited by defendant, has reference to rules of evidence and has no application to the point raised.

It next is contended that because no autopsy was made (K. S. A. 19-1033, 1034) the state failed to prove the cause of death and that the trial court erred in failing to strike the testimony of the doctor who received the body of the deceased at the University of Kansas Medical Center where he was an intern. The point is without merit. The testimony of the doctor as to the injuries—both internal and external—clearly established that death was due to the injuries sustained in the collision.

It next is contended the trial court was without jurisdiction of the subject matter and that the judgment and sentence should be vacated because the information did not include the words—"which would be manslaughter at the common law." This, and other contentions made by defendant may be considered together.

Basically, it is argued that defendant was convicted upon an erroneous theory because of alleged dicta in *State v. Brooks,* 187 Kan. 46, 354 P. 2d 89, and *State v. McNichols,* 188 Kan. 582, 363 P. 2d 467, and that the rule laid down in *State v. Yowell,* 184 Kan. 352, Syl. 4, 336 P. 2d 841, was disregarded in that here the evidence

failed to establish conduct by defendant amounting to negligence or further wrong so as to be, in its nature, dangerous, or so as to manifest a reckless disregard for the safety of others.

The *Brooks* case was a prosecution for manslaughter in the fourth degree arising out of a truck-automobile collision. In the opinion it was said—

"We think the evidence was sufficient to prove a violation of G. S. 1949, 8-537 regulating driving upon the right side of the highway and of G. S. 1949, 8-531 relating to reckless driving. That driving on the left-hand side of the highway and reckless driving are misdemeanors needs no further statement. Misdemeanors are punishable by G. S. 1949, 8-5,125. The state's evidence was sufficient to show that the defendant's conduct was unlawful amounting to misdemeanors denounced by statute for the purpose of protecting human life and safety and that death would not have resulted except for his unlawful conduct." (p. 49.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"As held in *State v. Custer,* supra, and our other decisions, involuntary manslaughter is the killing of another unintentionally and without malice and results either from the commission of a lawful act or an unlawful act. If death resulted from negligent conduct in doing a *lawful act* it is necessary in order to constitute manslaughter that the conduct be reckless, that is, be such as to evince disregard or indifference to consequences, under circumstances involving danger to life and safety to others, although no harm was intended. On the other hand, if death resulted from *unlawful conduct* amounting to misdemeanors denounced by statutes *for the purpose of protecting human life and safety,* and the death would not have resulted except for the unlawful conduct, the killing would also be manslaughter at common law. Whether statutes are enacted and designed for the purpose of protecting human life and safety is a question of law for the courts to determine (*State v. Yowell,* 184 Kan. 352, *supra*)." (p. 50)

The *McNichols* case also was a prosecution for manslaughter in the fourth degree, the death being alleged to have resulted from an intersection collision caused by defendant's failure to stop at a stop sign. In the opinion it was said—

"The decisions following *State v. Custer,* supra, under G. S. 1949, 21-420, defining manslaughter in the fourth degree, clearly indicate two types of conduct which would be manslaughter at the common law. The instructions given by the court in the instant case correctly give recognition to such interpretation of the statute. It is sufficient to sustain a conviction under 21-420, *supra,* that the person charged cause the death of another by unlawful conduct amounting to a misdemeanor denounced by statute for the purpose of protecting human life and safety. Under such circumstances, where the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law." (p. 587)

Application of what was said in the foregoing cases to the facts before us is clear. Under K. S. A. 8-552 (*b*) defendant was required

to stop at the stop sign on Renner Road. All of the evidence is to the effect that he did stop. The statute, however, does not end there. It further provides that a driver, after having stopped, shall yield the right of way to any vehicle which has entered the intersection from another highway *or which is approaching so closely on the other highway as to constitute an immediate hazard.* Defendant was charged with failing to yield the right of way, and from the evidence the trial court was justified in finding that the Weber car approaching from the east constituted an immediate hazard and that defendant failed to yield the right of way to it. The statute was enacted for the purpose of protecting human life and safety, and violation of it constitutes a misdemeanor (K. S. A. 8-5,125).

The defendant was fully apprised of the charge against him and the information was not fatally defective. There is no showing that he did not receive a fair trial throughout and no error has been established.

The judgment is affirmed.