NOT DESIGNATED FOR PUBLICATION

No. 116,376

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL LEE WOOD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed July 20, 2018. Affirmed in part, reversed in part, and vacated in part.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

BUSER, J.: Samuel Lee Wood appeals his convictions which resulted from a traffic stop where incriminating evidence was seized. Wood raises three issues. First, he claims the district court erred in suppressing drug evidence discovered at the scene of the vehicle stop. Second, Wood complains that his consent to an evidentiary blood test to determine whether he had ingested drugs or alcohol was coerced and, therefore, invalid. Third, Wood contends the district court never found him guilty of possession of methamphetamine at the conclusion of the bench trial and, as a result, his conviction should be reversed and the sentence should be vacated.

1

Upon our review, we affirm the district court's denial of Wood's motion to suppress evidence, including the incriminating blood test results. We reverse the conviction for possession of methamphetamine, however, and vacate the sentence.

FACTUAL AND PROCEDURAL BACKGROUND

Kevin Matthews was driving in Independence, at around 10 p.m. on December 18, 2014. As he crossed a bridge, Matthews noticed Wood's vehicle stopped on the side of the road. Matthews remarked that this was "a bad place to park" because it was right off the bridge with steep ditches and a narrow shoulder.

About 10 minutes later, when Matthews was traveling in the other direction, he saw Wood parked at the same location with his headlights illuminated. Matthews testified that Wood's head was on the steering wheel. When Matthews honked his horn several times, Wood did not respond. At 10:12 p.m., Matthews called law enforcement. About 11 minutes later, after Wood's vehicle slowly rolled from the right-hand side of the road to the left-hand side of the road, Matthews again called law enforcement and said, "You need to get somebody out here pretty quick and get him off the street." According to Matthews, Wood appeared "drunk or high."

Officer Tim Townley responded to Matthews' calls. Arriving at the location, the officer noticed Wood's vehicle parked on the side of the road, blocking an east-west cross-street. As the officer drove closer, Wood's vehicle began to drive away at an "extremely slow rate of speed." According to Officer Townley, Wood was driving about 10 miles per hour in a 30 miles per hour zone. When the officer activated his emergency lights, Wood pulled to the side of the road and "hit the curb." During the traffic stop, the police dispatcher erroneously informed Officer Townley that Wood's driver's license was revoked. In fact, the officer later discovered that Wood's commercial driver's license (CDL) had been revoked, not his regular driver's license.

2

Officer Townley ordered Wood to exit the vehicle. As Wood did so, a plastic baggie containing methamphetamine and a cellophane wrapper containing marijuana fell from his lap onto the ground. Wood was arrested for the driver's license violation. During a search incident to arrest, Officer Townley discovered a pipe in Wood's pocket that later tested positive for methamphetamine.

Officer Townley transported Wood to the police station where he read an implied consent form for an evidentiary blood draw. Wood consented to the blood draw. The blood sample taken from Wood tested positive for marijuana.

The State charged Wood with possession of marijuana with a prior conviction, a severity level 5 drug felony in violation of K.S.A 2014 Supp. 21-5706(b)(3); possession of methamphetamine, a severity level 5 drug felony in violation of K.S.A. 2014 Supp. 21-5706(a); possession of drug paraphernalia, a class A nonperson misdemeanor in violation of K.S.A. 2014 Supp. 21-5709(b)(2); and driving under the influence of alcohol or drug (DUI), third offense, in violation of K.S.A. 2014 Supp. 8-1567(a)(3).

Wood filed a motion to suppress all the incriminating evidence resulting from the stop of his vehicle. After an evidentiary hearing, the district court denied the motion. A bench trial was conducted and the district court found Wood guilty of the crimes charged, with the exceptions that he was convicted of the misdemeanor offense of marijuana possession and no verdict was rendered on the methamphetamine count. The district court sentenced Wood on all of the convictions and the charge of possession of methamphetamine. Wood timely filed this appeal.

MOTION TO SUPPRESS EVIDENCE SEIZED AT THE VEHICLE STOP

Wood first contends the "dispatch supervisor made an unreasonable mistake when she failed to correctly read, understand, and report the status of [his] driver's license

report." This error, in Wood's view, caused Officer Townley to order Wood out of his vehicle, which then led to the discovery of methamphetamine and marijuana. Wood argues that, but for this mistake, he would not have been arrested and the district court erred when it failed to suppress the evidence stemming from this "unreasonable mistake." Alternatively, Wood claims Officer Townley lacked reasonable suspicion to conduct a DUI investigation.

For its part, the State makes a two-part response. First, the State cites *Herring v. United States*, 555 U.S. 135, 137, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009), for the proposition that a mere negligent mistake by the dispatcher in this case should not result in the exclusion of the incriminating evidence due to an illegal arrest. Second, the State invokes the inevitable discovery doctrine to argue that, given the indicators that Wood was DUI, the drugs that fell from Wood's lap onto the ground when he got out of his car would have been found anyway since he needed to get out of the car in order to perform field sobriety tests.

Appellate courts apply a bifurcated standard when reviewing a district court's decision on a motion to suppress. The district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence, while the ultimate legal conclusion drawn from those facts is reviewed de novo. When reviewing factual findings, appellate courts do not reweigh the evidence or assess the credibility of witnesses. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). When, as here, the material facts are not in dispute, this court exercises unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

We first address whether Wood's motion to suppress should have been denied because his arrest for driving on a revoked license was based on the erroneous information from the dispatcher that his license, in fact, was revoked. As a general proposition, if a warrantless arrest is unlawful, then any search incident to that arrest is

4

unlawful and the contraband should be suppressed under the exclusionary rule. See *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). This case presents the unique circumstance that Wood was asked to step out of his car preparatory to an arrest for driving with a revoked driver's license and to facilitate the taking of field sobriety tests. This movement by Wood caused the drugs to fall from his lap and land on the ground in plain view of Officer Townley.

As the argument is framed by the parties on appeal, the critical question is whether the dispatcher's mistake of fact—that Wood's driver's license was revoked—necessitates the use of the exclusionary rule to exclude the incriminating evidence.

Of particular relevance to this issue, Melissa Adey, the dispatch supervisor for the Independence Police Department, testified at the suppression hearing that she communicated with Officer Townley prior to and during the traffic stop. After Officer Townley stopped Wood's vehicle at about 10:30 p.m., Adey informed the officer that Wood did not have any "wants or warrants," but that his driver's license was revoked. Only later, after Wood was arrested, did Adey and Officer Townley realize that Wood's CDL, not his regular driver's license, had been revoked.

Adey explained her mistake:

"I had never seen [a computer screen] like that before. It said—all I saw was the word 'revoked.' And being—multitasking and in the hurry that we are in there, I said—I told [Officer Townley] on the radio that the [license] was revoked.

". . . I did not see the 'CDL' part."

On cross-examination, Adey agreed that the line she misread stated simply, "Regular, valid Kansas, CDL revoked."

5

The exclusionary rule is a judicially created remedy that prohibits the use of evidence obtained in violation of the Fourth Amendment in order to deter future violations. *State v. Baker*, 306 Kan. 585, 590, 395 P.3d 422 (2017). But not all violations warrant the imposition of the exclusionary rule. "Our cases establish that such suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Herring*, 555 U.S. at 137. In making this assessment, courts must balance the deterrent effect against the societal harms that come from suppressing the evidence. This analysis is viewed from an objective perspective. 555 U.S. at 145.

In *Herring*, the United States Supreme Court decided the issue of whether a police recordkeeping error that resulted in an unlawful search required the application of the exclusionary rule to suppress the drug evidence obtained in the search. The court held that the exclusionary rule would be warranted in some cases, but it would depend on the type of error. Under the facts in *Herring*, "the error was the result of isolated negligence attenuated from the arrest. We hold that in these circumstances the jury should not be barred from considering all the evidence." 555 U.S. at 137.

*Herring* provides valuable precedent that is helpful to a resolution of this issue:

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. . . .

. . . .

". . . [W]e conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" *Herring*, 555 U.S. at 144,

6

147-48 (quoting *United States v. Leon*, 468 U.S. 897, 907-08, 104 S. Ct. 3405, 82 L. Ed. 2d 677 [1984]).

In the case on appeal, the evidence shows that the dispatcher's mistake of fact was not a case of deliberate, reckless, or grossly negligent conduct. Nor was there any showing that this erroneous report of Wood's driver's license status was part of recurring or systemic negligence by law enforcement, or a deliberate violation of Wood's Fourth Amendment rights. On the contrary, the dispatcher simply misread the computer screen which indicated that Wood's CDL license was revoked but his regular driver's license was valid. Moreover, Officer Townley had no reason to question or doubt the information from the dispatcher.

We conclude the dispatcher's error which led to Wood's arrest was the result of an isolated human error, not a systemic error that could be attributed to an entire record-keeping system. The dispatcher's mistake was simple negligence attenuated from Wood's getting out of the car and inadvertently causing the drugs to fall on the ground in plain view. See *State v. Ulrey*, 41 Kan. App. 2d 1052, 1060, 208 P.3d 317 (2009) (When officers are in a place they have a right to be, they may seize any evidence in plain view.). In this unique circumstance, the marginal benefits of excluding the evidence would not justify the substantial social costs of exclusion. We find no error in the district court's refusal to exclude the incriminating evidence.

Next, for the sake of completeness, we address the State's alternative argument that—regardless of any improper arrest—the drugs would have been inevitably discovered when Wood got out of his car in order to perform field sobriety tests as part of Officer Townley's DUI investigation. As described by the United States Supreme Court, the inevitable discovery rule "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 579 U.S. ____, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016).

7

"Investigatory detentions are permitted under K.S.A. 22-2402 and the Fourth Amendment to the United States Constitution if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime." *State v. Pollman*, 286 Kan. 881, Syl. ¶ 3, 190 P.3d 234 (2008). In this regard: "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of evidence." 286 Kan. 881, Syl. ¶ 6.

The district judge made extensive findings of fact at the conclusion of the hearing with regard to evidence known to Officer Townley that suggested Wood had committed or was committing a DUI:

> "THE COURT: All right. The Court believes that there was a reasonable and articulable suspicion for the law enforcement officers to make contact with Mr. Wood. The Court believes that when you look at the totality of the circumstances, there were a lot of reasons for them to place him under arrest and to continue the investigation by requesting a blood draw.
>
> "Number one: At the point in time when a Joe Member of the Public calls, in this case Kevin Matthews, and describes you as drunk or high and behind the wheel of a vehicle and relays that information on to law enforcement, in the Court's eyes alone, that is sufficient reason to make contact with that individual and go further.
>
> "But beyond that, we have a lot of other issues here. We have the fact that the caller reported him as driving. When the officer arrived, the officer could tell that his vehicle had moved.
>
> "As noted by the Court, the caller described him as drunk or high. The caller noted that he had waylaid on his horn multiple times. The Court takes that as really pounding on the horn to see if the driver would respond. None of that happened.
>
> "Law enforcement got involved. As they're arriving—dispatch obviously has communicated with them—but upon their arrival, they see a vehicle blocking Cedar Street. That's a good reason to find out what's going on. But that vehicle gives them even more reason to find out what's going on with the driver by moving at a slow rate of speed. Moving at a slow rate of speed is generally [a] sign[] of intoxication.

8

"Beyond that, even be it a small curb, a curb was still hit—was still struck. Literally, when you look at this case, it reeks of reasons to stop Mr. Wood[] and place him under arrest.

"At the point in time, like I said, when Joe Blow Public calls in and says you're drunk or high, at the point in time the officers arrive and see you operating a vehicle at a slow speed, hitting the curbs and blocking the street, that officer has plenty of reasons to take you out of that vehicle, perform drug and alcohol tests upon you, and/or request a blood draw.

"So the Court's going to deny the motion to suppress."

Importantly, Wood does not assert that these factual findings are not supported by substantial competent evidence. It was these factual findings upon which the district court based its legal conclusion that, given the indicators that Wood was intoxicated while operating his vehicle in an unsafe manner, Officer Townley had a legal basis to ask him to step out of his vehicle in order to perform field sobriety tests as part of a DUI investigation. Of course, this movement caused the drugs in Wood's lap to fall on the ground in plain view of Officer Townley.

Although Wood argues on appeal that "[i]n this case, the [S]tate presented insufficient evidence—other than the mistaken belief that Mr. Wood was driving with a revoked license—to support ordering him out of his car," we are persuaded that, as catalogued by the district court, there were several indicators of intoxication that permitted Officer Townley to briefly detain Wood and request that he perform field sobriety tests in furtherance of the officer's DUI investigation. Because the initiation of such an investigation necessarily meant that Wood had to exit his vehicle in order to perform field sobriety tests, the plain view discovery of the drugs that fell to the ground was inevitable. Thus, for this additional, alternative reason, the district court did not err when it denied Wood's motion to suppress evidence.

9

Wood next contends the district court erroneously admitted the results of his warrantless blood draw because his consent was coerced by threat of further criminal penalty. See K.S.A. 2014 Supp. 8-1001(k)(4) or K.S.A. 2014 Supp. 8-1025. Neither party disputes the material facts relating to this issue; thus, our court exercises unlimited review. *Cleverly*, 305 Kan. at 604.

After Wood's arrest, Officer Townley transported Wood to the police station where the officer read an implied consent (or DC-70) form to him. Wood signed this form and then submitted to a blood draw, which later tested positive for marijuana. At the suppression hearing, Wood objected that the blood draw was involuntary due to the coercive nature of the DC-70 form. In particular, Wood objected that he was improperly advised that his failure to consent to a blood test would subject him to a separate criminal offense.

In considering the matter, the district court acknowledged *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), was pending but noted there was "no guidance from the Supreme Court" at that time regarding this issue. The district court denied Wood's request for a stay of trial pending a decision in the *Birchfield* case.

At trial, and prior to the introduction of the results of the blood draw, the State informed the district court: "For the purposes of this trial, the parties are stipulating the implied consent was done properly and the blood draw was done properly." Defense counsel confirmed the stipulation.

Contrary to this stipulation, Wood now argues on appeal that the incriminating results of the blood draw should have been suppressed because his consent was

10

involuntary due to the coercive nature of the DC-70 (implied consent) advisory. Because this issue may be simply resolved based on the record before us, we will review Wood's claim despite the stipulation below that his consent to the blood draw was valid.

On appeal, Wood relies on *Birchfield*, in which the Supreme Court held: "Motorists may not be criminally punished for refusing to submit to a blood test based on legally implied consent to submit to them." 136 S. Ct. 2160, Syl. ¶ 2. Our Supreme Court followed *Birchfield*'s lead in *State v. Nece*, 306 Kan. 679, 396 P.3d 709 (2017) (consent to breath-alcohol test given after inaccurate informed consent advisory was involuntary), and *State v. Ryce*, 306 Kan. 682, 396 P.3d 711 (2017) (statute criminalizing driver's withdrawal of implied consent to warrantless blood test violated Fourth Amendment).

For its part, the State acknowledges *Birchfield*, *Nece*, and *Ryce* but argues the district court's denial of Wood's motion to suppress blood test evidence should be affirmed based on the good-faith exception to the exclusionary rule.

Preliminarily, the State did not raise this argument before the district court. Usually, issues not raised before the district court may not be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are, however, exceptions to this rule including: the newly asserted theory involves only a question of law arising on proved or admitted facts and it is finally determinative of the case. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

The issue of whether the good-faith exception applies to the otherwise unreasonable blood draw of Wood is a question of law that is determinative regarding Wood's DUI charge. As a result, we will consider the State's claim of a good-faith exception for the first time on appeal. "Whether the good-faith exception applies is a question of law over which an appellate court has unlimited review." *State v. Schmidt*, 53 Kan. App. 2d 225, 234, 385 P.3d 936 (2016).

11

The United States Supreme Court described the good-faith exception to the exclusionary rule in *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987):

"The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written."

Our Supreme Court expressly adopted the good-faith exception in *Daniel*, 291 Kan. at 496. The good-faith exception to the exclusionary rule applies to "evidence obtained by police acting in objectively reasonable reliance upon a statute that was subsequently found to violate the Fourth Amendment." 291 Kan. at 498. An officer's reliance on a statute is objectively reasonable when the statute was valid at the time of the officer's action unless (1) "'the legislature wholly abandoned its responsibility to enact constitutional laws'"; or (2) if the statute's "'provisions are such that a reasonable officer should have known that the statute was unconstitutional.'" 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

Our court in *Schmidt* held the good-faith exception to the exclusionary rule applied to blood test results obtained after an officer advised the defendant that he could be charged with a separate crime for refusing to submit to a blood test, but prior to the date that advisory was declared unconstitutional. 53 Kan. App. 2d at 237. We held the testing officer had no reason to know the implied consent advisories would be found impermissibly coercive years after the defendant's arrest. 53 Kan. App. 2d at 236.

12

Our court also noted that at the time of the defendant's arrest: "Kansas courts had consistently upheld the constitutionality of warrantless blood draws undertaken pursuant to K.S.A. 8-1001." 53 Kan. App. 2d at 235. Moreover, in *Schmidt*, our court determined the Kansas Legislature did not wholly abandon its responsibility to pass constitutional laws when it enacted K.S.A. 2014 Supp. 8-1001(k)(4) or K.S.A. 2014 Supp. 8-1025. 53 Kan. App. 2d at 236-37. The court reasoned that other states had similar statutes and continued to uphold them prior to the United States Supreme Court's decision in *Birchfield*. *Schmidt*, 53 Kan. App. 2d at 236.

Moreover, in *State v. Perkins*, 55 Kan. App. 2d 372, 415 P.3d 460 (2018), our court addressed the good-faith exception in the context of a DUI case and an evidentiary breath test. In *Perkins*, we recognized that the good-faith exception to the exclusionary rule afforded an independent ground to admit breath test results a law enforcement officer obtained in reliance on the implied consent advisory later found to be unconstitutional. 55 Kan. App. 2d at 381-83.

In summary, our court has repeatedly held the good-faith exception to the exclusionary rule precludes the suppression of alcohol tests obtained by police in reliance on the Kansas implied consent law prior to the decision in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017). *State v. Kraemer*, 52 Kan. App. 2d 686, 698-99, 371 P.3d 954 (2016).

We hold the good-faith exception to the exclusionary rule applies to this case. Officer Townley informed Wood of an advisory that was declared unconstitutional almost two years after Wood's arrest. The district court did not err in admitting the results of the warrantless blood draw because Officer Townley acted in objectively reasonable reliance on K.S.A. 2014 Supp. 8-1001(k)(4) and K.S.A. 2014 Supp. 8-1025 when mistakenly advising Wood that he could be charged with a criminal offense for refusing to consent to the blood test.

For his final issue on appeal, Wood contends that he was "never actually found" guilty of possession of methamphetamine. As a result, he claims his purported conviction and resulting sentence should be vacated. For its part, the State responds: "Admittedly, as noted by Wood, the district court never specifically said, 'the court finds Wood guilty of possession of methamphetamine.' But the factual findings by the district court unquestionably indicated that the court found him guilty."

Both parties agree that, as a question of law, our court may review the issue de novo. See *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011) (issues of law are subject to de novo review).

While Wood did not object in the district court that his conviction or sentence for methamphetamine was illegal, on appeal he argues that, without a conviction, his sentence is illegal. K.S.A. 2017 Supp. 22-3504(1) provides that a court may correct an illegal sentence at any time. Moreover, Wood also argues that we may consider this issue for the first time on appeal because it involves only a question of law arising on proved or admitted facts that are finally determinative of the case, and review is necessary to serve the ends of justice or to prevent denial of fundamental rights. See *Phillips*, 299 Kan. at 493. The State does not complain about any lack of preservation and under these circumstances we will consider the issue.

At the close of the bench trial, the district judge made several oral findings regarding the charges against Wood, during which the following discussion took place:

> "[THE COURT:] So based on all those reasons and the fact that [Wood] does have prior convictions, the Court is finding [him] guilty of the DUI.
> "As it relates to the drugs, there was uncontroverted testimony that methamphetamine and weed was observed falling from his lap when he exited the

14

vehicle. The items were tested, and they tested positive for methamphetamine and for weed.

"As it relates to drug paraphernalia, the Court has a nasty-looking glass pipe that clearly [indicates] to the Court that illegal substances have been consumed out of it and the officers testified that it is used to consume illegal substances. So the Court's going to find him guilty of drug paraphernalia.

"Let's see. Did I miss a count?

"[THE STATE]:  No. Meth, marijuana, and paraphernalia.

"THE COURT:  All right. And the meth is a misdemeanor—or the marijuana is a misdemeanor because there's no evidence of a prior conviction and the Court didn't allow the preliminary hearing ahead of time.

"[THE STATE]:  Well, that—it's in the same case, the journal entry. It's—the prior DUI and marijuana—

"THE COURT:  Right. I'm just saying the Court's finding him guilty of misdemeanor marijuana.

. . . .

"[THE STATE]:  I'm agreeing. I'm just saying that—well, is that a bad way to say it? I understand your ruling. I just want to make the record clear that that count is in the other charge.

"THE COURT:  Got it.

. . . .

"THE COURT:  And I did address all the counts, right?

"[THE STATE]:  Yes."

Shortly thereafter, Wood's counsel clarified,  "Your Honor, . . . I think this meth charge will be a senate bill . . . This meth conviction should be senate bill."

In support of his argument, Wood cites K.S.A. 2017 Supp. 60-252(a)(1), which provides:

"In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated

15

> on the record after the close of evidence, or may appear in an opinion or a memorandum of decision filed by the court."

Wood also relies on Kansas Supreme Court Rule 165(a) (2018 Kan. S. Ct. R. 215) which similarly states: "In a contested matter submitted to the court without a jury . . . the court must state its findings of fact and conclusions of law in compliance with K.S.A. 60-252."

In response, the State does not dispute that the district court failed to specifically find Wood guilty of possession of methamphetamine, but it contends the provisions of K.S.A. 2017 Supp. 60-252(a)(1) apply only to civil, not criminal cases.

Our Supreme Court has cited the need for district courts in civil and criminal cases to comply with the requirement in K.S.A. 2017 Supp. 60-252(a)(1) to make factual findings and conclusions of law. See *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009). There is some indication, however, that this requirement is not applicable to a criminal bench trial. See *State v. Scott*, 201 Kan. 134, 137, 439 P.2d 78 (1968). All things considered, we know of no on-point precedent that provides K.S.A. 60-252 (a)(1) is violated whenever a trial court fails to pronounce a verdict at the conclusion of a criminal bench trial.

On the other hand, K.S.A. 2017 Supp. 22-3424(a), a criminal procedure statute, states that "[t]*he judgment shall be rendered* and sentence imposed *in open court*." (Emphasis added.) Here, it is undisputed that the district court did not render a judgment in open court on the possession of methamphetamine charge. We hold that without a judgment finding Wood guilty of possession of methamphetamine there can be no conviction and, therefore, no basis for imposing sentence.

What is the remedy? Other jurisdictions presented with situations wherein an appellate court found that a judge did not render a verdict on a particular criminal charge

16

at the conclusion of a bench trial have reversed the purported conviction and vacated the sentence.

In *People v. Zohar*, 158 Misc. 2d 1028, 1029, 607 N.Y.S.2d 209 (App. Term 1993), Zohar was charged with one count of assault in the third degree and one count of criminal possession of a weapon in the fourth degree. At the conclusion of the bench trial, the district court found Zohar guilty of the lesser included offense of attempted assault on the first count but failed to render a verdict on the criminal possession of a weapon count. At a later sentencing proceeding, the district court acknowledged that it neglected to render a verdict at the bench trial but nevertheless sentenced Zohar on both counts charged.

Under New York Criminal Procedure Law § 350.10(5), the district court must render a verdict upon each count or state its disposition of each count on the record when the information contains multiple counts. Failure to adequately dispose of a count constitutes a verdict of not guilty for that count. On appeal, the *Zohar* court noted that the verdict marks the end of the trial and a conviction occurs upon the entry of the verdict. New York's statutes allow for the court to correct a formal error in the verdict, but that power does not extend to correcting the substance of the verdict. *Zohar* ruled that correcting a verdict's substance implicates double jeopardy principles. 158 Misc. at 1030. As a result, the criminal possession of a weapon count was dismissed and the conviction and sentence was vacated.

Similarly, in *People v. Hernandez*, No. E032047, 2003 WL 1914153 (Cal. Ct. App. 2003) (unpublished opinion), the district court failed to make findings of guilty or not guilty at the conclusion of the bench trial on one of the charges. The district court noticed the failure a couple months later and corrected the verdict to reflect a judgment of guilty without the defendant being present. California Penal Code § 1167 provided that the district court must make a general verdict to be entered upon the court record when a

17

jury trial is waived. Also, California Penal Code § 689 provided that no person could be convicted of a public offense without a finding of the court in a case where a jury has been waived. The court held that the reporter's transcript reflected that the district court made findings of guilt for one count but not for the count complained of on appeal. The appellate court held this was not a clerical error in which correction was appropriate. Instead, the court held that because judicial findings had not been made, the conviction could not stand and jeopardy attached to that count.

Returning to the case on appeal, it is undisputed that the district court did not enter a judgment of guilty for possession of methamphetamine in open court at the conclusion of the bench trial. This was not a clerical error, but a substantive error in failing to comply with K.S.A. 2017 Supp. 22-3424(a)'s requirement to render the judgment in open court. Similar to *Zohar* and *Hernandez,* because no judgment was rendered in open court at the conclusion of the bench trial, we are persuaded that the appropriate remedy is to reverse the conviction for possession of methamphetamine and vacate the sentence. All other convictions and sentences are affirmed.

Affirmed in part, reversed in part, and vacated in part.