No. 46,266

JAY-OX, INC., *Appellee*, v. SQUARE DEAL JUNK COMPANY, INC., *Appellant.*

(494 P. 2d 1103)

Opinion filed March 4, 1972.

*Irving Achtenberg,* of Kansas City, Mo., argued the cause, and *Hugh E. Brownfield,* of Kansas City, was with him on the brief for the appellant.

*William O. Isenhour, Jr.,* of Mission, argued the cause, and *Kenneth P. Soden,* of Mission, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a suit for money judgment for material and services rendered. Primarily the account was for recovery for certain steel cylinders which defendant allegedly failed to return to plaintiff. Trial to the court resulted in a judgment for plaintiff from which defendant appeals.

Although there was some dispute in the evidence the background of the action may be summarized as follows:

Oxygen Service Company is now a division of plaintiff-appellee Jay-Ox, Inc. Prior to its merger with Jay-Ox it commenced in 1960 selling to defendant-appellant Square Deal Junk Company, Inc. oxygen and acetylene gas contained in steel cylinders. When the cylinders were empty they were to be returned to Oxygen Service for refilling and reuse. The tanks remained either the property of Oxygen Service or one of its suppliers. Business was conducted on an open running account. Appellant was charged for gas, cylinders, and other supplies and repairs and was given credit for cylinders returned. Upon occasion appellant paid for damaged or lost

cylinders. Invoices reflecting the number of cylinders outstanding were rendered at the time of each delivery and complete monthly statements were also rendered during the period of the account.

The basis for appellee's suit was that appellant had failed to return all the cylinders delivered to it. In support appellee offered in evidence, and the trial court received, certain of its business records consisting of ledger sheets and copies of invoices. The trial court rendered judgment for appellee for $3,838.81 which, under the measure of damages applied, essentially allowed recovery for approximately seventy cylinders. Further facts will be stated in discussing the issues raised upon appeal.

Appellant contends the action was not timely commenced under the applicable statute of limitations. For present purposes the action may be said to have been commenced March 23, 1967, when Oxygen Service filed its petition against appellant. The first time appellee voiced concern to appellant because of a shortage of cylinders was in December, 1964. In February, 1965, invoices were delivered to appellant wherein appellee sought to collect demurrage for the missing cylinders. Appellant contends the action is one governed by that which is now K. S. A. 1971 Supp. 60-513 which in part provides:

"*Actions limited to two years.* The following actions shall be brought within two (2) years: . . .

"(2) An action for taking, detaining or injuring personal property, including actions for the specific recovery thereof."

Broadly speaking, the arrangement by which appellant secured possession of the cylinders might be termed a bailment; however, it was one which arose by implied contract. Merchandise and services were requested and received. The invoices used by appellee and which accompanied each delivery contained this proviso:

"By accepting these cylinders you have agreed that the cylinders shown on this invoice remain the property of OXYGEN SERVICE COMPANY; these cylinders are NOT SOLD and they are not transferable and are for your use only; each cylinder will be returned promptly when empty; . . . that if cylinders are lost or damaged in any way, or not returned within 90 days from date of shipment, they will be paid for immediately upon request, at OXYGEN SERVICE COMPANY'S then current retail new cylinder values."

In *Geis v. Mathes,* 128 Kan. 753, 280 Pac. 759, this court held:

"Where the scope of a bailee's obligation is defined in a written contract, his liability to the bailor is specifically governed thereby, and not by the general law of bailments." (Syl. ¶ 1.)

Under some circumstances a bailor may have an election of remedies to pursue for conversion of the property; he may have an action in tort based upon the wrongful act of conversion, or he may proceed in contract for failure to redeliver the property (8 Am. Jur. 2d, Bailments, § 289).

Appellee's theory from the beginning in asserting this claim has been that its action is one in contract. Under the particular facts disclosed we think it appropriate that the action be so treated.

As we construe the arrangements revealed by the conduct of the parties over several years, it amounted to a bailment for an indefinite period; hence the cause of action did not accrue until there was a refusal of a demand for·the cylinders (8 Am. Jur. 2d, Bailments, § 291).

Whether appellant's refusal to account for the cylinders came as early as December, 1964, or February, 1965, as asserted by appellant, is immaterial (there is evidence the refusal actually came much later as appellant continued accepting cylinders until October, 1965, hedging meanwhile as to an accounting). In any event the action was commenced well within the three year period of time authorized for actions upon implied contracts (K. S. A. 60-512 [1]).

Appellant asserts the court erred in permitting appellee to amend its petition during the trial of the action. The complaint arises from the fact the petition was initially filed in the name of Oxygen Service as though it were a completely separate legal entity. The evidence revealed it and another company merged into Jay-Ox, Inc. during some period of its business dealings with appellant but it continued to operate under the same trade name as a division of Jay-Ox. The trial court permitted an amendment to reflect these facts under what is now K. S. A. 1971 Supp. 60-215 (a), naming appellee as successor in interest to Oxygen Service.

Appellant contends there was no action brought by a proper party plaintiff and it makes some vague argument it did not have the notice necessary to defend properly in that it had not been able through discovery procedures to inquire as to all the relevant facts. We fail to perceive how appellant has been misled or how it has been prejudiced by the amendment. We note that many of the printed invoices, delivered long before the commencement of litigation, expressly revealed that Oxygen Service was a division of Jay-Ox. We see no abuse of judicial discretion in the amendment (for general statement of applicable rules see *Ballhorst v. Hahner-Foreman-Cale, Inc.*, 207 Kan. 89, Syl. ¶ 1, 484 P. 2d 38).

The principal error alleged by appellant is the admission into evidence over its objection of certain of appellee's business records. These two challenged exhibits consisted of pages number 14 through 38 of appellee's ledger sheets, comprising original records reflecting appellee's business transactions with appellant during the period from January 2, 1962, to September 13, 1968.

Generally these pages showed debits and credits for merchandise delivered per invoices, credits reflecting payments, and a running cylinder inventory. This inventory showed cylinders delivered and the number returned for each transaction and the total number not yet returned. The first thirteen sheets of this ledger were missing, the testimony being that a search had been made but they had become either lost or destroyed. The missing pages apparently covered business transactions during the period from October, 1960, to January, 1962. The crunch, so far as appellant is concerned, lies in the fact that the first item on the first page of the challenged exhibits, page No. 14 (evincing a transaction dated January 1, 1962, wherein two cylinders of gas were delivered and two empty cylinders were returned), reflects that a total of 73 cylinders (65 oxygen and 8 acetylene) were then not returned.

Appellant argues that the exhibits constituted an incomplete record beginning with a cumulative inventory unsubstantiated by admissible evidence, that they were not made in the regular course of business, were untrustworthy and should not have been received. We cannot agree.

When the exhibits were offered as business entries pursuant to K. S. A. 60-460 (m), the "shop book" exception to the hearsay rule, the trial court was required to find prior to their admission that they were made in the regular course of business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness. There was an explanation as to why the first thirteen pages of the ledger were not produced and the trial court in its admission of the challenged records made the requisite finding. We see no reason to disturb that foundation finding respecting the admissibility of the challenged exhibits.

Appellant contends that a lump sum figure may not be used as a starting point of the running inventory record of the missing cylinders shown in the two exhibits. It argues that a book of account must be admitted in its entirety, citing some authority in

other jurisdictions to that effect. It seems clear that here the transactions between the parties respecting the cylinders had developed into the nature of an account stated. Over a period of several years both invoices and monthly statements (the latter consisting of copies of the ledger sheets) showing the number of cylinders not returned had been rendered to appellant and had never been challenged or questioned in any way. Whatever the rule may be elsewhere in *Reed v. Thomas*, 134 Kan. 849, 8 P. 2d 379, 84 A. L. R. 110, this court held:

"The bare statement of a balance due, if accepted as correct, may constitute an account stated, even if it is not accompanied by an account of the items, under the rule that if a fixed and certain sum is admitted to be due for which an action would lie, that will be evidence to support a claim on an account stated." (Syl. ¶ 1.)

In further support of the reliability of the challenged exhibits the trial court had before it a letter dated June 18, 1960, written by appellant to National Cylinder Gas Company in which it acknowledged it then had on hand a total of 57 oxygen and acetylene cylinders which had not been returned. This letter was received in evidence over appellant's objection based upon relevancy, which objection has been renewed here. We think the trial court properly received and considered the exhibit. The testimony was that National Cylinder had for a previous period of time furnished appellant with the gas used by it and National's account with appellant was then transferred to and taken over by appellee with the knowledge and consent of appellant. In his trial testimony appellant's president tacitly conceded having a quantity of cylinders on hand at the time of National's transfer of the account to appellee but he did not know how many. He testified his company had loaned gas cylinders to approximately fifteen customers over the years; he thought, but was not sure, that all these customers had returned the cylinders. He also denied having received any statements from appellee showing how many cylinders appellant had been charged with; however, this testimony was wholly refuted by appellee's evidence which must now be accepted.

In this same connection appellant asserts the evidence failed to show that appellee owned the cylinders in question. This, along with most of the other issues at trial, was primarily a question of fact. There was evidence appellee was either the owner or

the lessee from National Cylinder of all the cylinders in question and thus entitled to maintain the action.

Appellant complains as to the amount of the judgment allowed, saying the ordinary measure of damages for a tortious conversion of property (fair market value) would have been proper instead of that used, that as an alternative only a depreciated value for used cylinders should have been used, and in no event should the price stated in the invoice have been applied because it in effect constituted a penalty not favored in law. The trial court had before it considerable testimony respecting the nature and use of the cylinders under the custom of that particular industry. It was shown that appellee was liable to pay to National for each leased cylinder not returned the then current retail new cylinder value, which price at all times pertinent herein was the sum of $54.50. Invoices used by appellee and appellant contained the same proviso and on previous occasions appellant had in fact paid appellee for lost or damaged cylinders at the rate of $54.50 per cylinder. There was evidence the cylinders are distinctively marked by each company using them and are not reusable by other companies; hence there is no market for used cylinders. The cylinders are virtually indestructible with proper handling and depreciation is not a significant factor in determining their value. The trial court's judgment amounted approximately to a finding for appellee for a recovery of 70 cylinders valued at the current retail new cylinder price of $54.50 each. We have already upheld appellee's theory that its action sounds in contract rather than in tort and under the circumstances we see no reason to disturb the amount of the judgment rendered.

The judgment is affirmed.

APPROVED BY THE COURT.