No. 47,375

STATE OF KANSAS, *Appellee*, v. EARL WILSON, *Appellant*.

(524 P. 2d 224)

Opinion filed July 17, 1974.

*Patrick J. Hurley,* of Leavenworth, argued the cause and was on the brief for the appellant.

*Patrick J. Reardon,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant appeals from conviction of murder in the second degree in violation of K. S. A. 1972 Supp. 21-3402.

On October 29, 1972, Cleotis Meeks, an inmate of the Kansas State Penitentiary at Lansing, fell from the fourth tier of cells to his death. Defendant Earl Wilson, another inmate who was fighting with Meeks immediately before his fall, was accused of having pushed Meeks to his death and charged with second degree murder. The facts presented in the record indicate witnesses, both inmate

and prison corrections personnel, observed Meeks running from Wilson and another inmate, calling for help. Such was the altercation that the corrections personnel who arrived on the scene were not able to subdue the participants in the fight and went for help. After the corrections personnel had withdrawn from the fourth tier and gone for help, Meeks fell or was pushed to his death. Conflicting eye-witness testimony related two versions of the fall. Custodial officer Raymond Dunlap testified that as he and another officer were hurrying down the steps to get help, he looked back and saw defendant pushing Meeks under the guardrail toward the edge of the fourth tier. When next he observed the scene, Meeks was falling toward the bottom of the shaft four floors below. Another inmate, Jack W. Zumalt, testified he was standing on the ground floor of the cell house, noticed a commotion on the fourth tier, saw Meeks run along the walkway, flip over the top rail and fall to the ground floor. The defendant did not testify.

Murder in the second degree is the malicious killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony. (K. S. A. 1973 Supp. 21-3402.) It is a class B felony and conviction therefor brings a minimum sentence of five to fifteen years and a maximum sentence of life imprisonment. (K. S. A. 1973 Supp. 21-4501 [b]). Voluntary manslaughter is the unlawful killing of a human being without malice, which is done intentionally upon a sudden quarrel or in the heat of passion. (K. S. A. 1973 Supp. 21-3403.) It is a class C felony drawing a minimum sentence of one to five years and a maximum of twenty years imprisonment. (K. S. A. 1973 Supp. 21-4501 [c].) The jury was instructed on second degree murder and on voluntary manslaughter. The distinction between the two homicides, other than the penalties, is the presence or absence of malice. The jury was also instructed, " 'Maliciously' means willfully doing a wrongful act without just cause or excuse."

Defendant was found guilty of second degree murder. On appeal he contends the trial court's instruction defining malice was not sufficient to enable the jury to distinguish between the crime of second degree murder and voluntary manslaughter.

Definition of the term malice approved in past decisions of this court include the definition given the jury in this case. (*State v. Jensen*, 197 Kan. 427, 417 P. 2d 273.) It is the instruction recommended for use by PIK Criminal, Homicide Definitions § 56.04.

When the definition of maliciously is read out of context and apart from the other instructions, defendant's argument of impreciseness may have some merit. Instructions are not to be read singly, however, but as a whole. (*State v. Ingram,* 211 Kan. 587, 506 P. 2d 1148; *State v. Blocker,* 211 Kan. 185, 505 P. 2d 1099.) Substituting the definition of maliciously for the word in the instruction on second degree murder, demonstrates the definition is most descriptive of the crime. Thus combined, the instruction for second degree murder reads as follows:

"(2) The defendant is charged with the crime of murder in the second degree. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

"1. That the defendant killed Cleotis Meeks;

"2. That such killing was done maliciously [willfully without just cause or excuse]; and

"3. That this act was done on or about the 29th day of October, 1972, in Leavenworth County, Kansas."

We find no merit in defendant's contention that the instructions did not adequately distinguish between second degree murder and voluntary manslaughter.

Defendant next contends he was entitled to an instruction on involuntary manslaughter. Involuntary manslaughter is defined in K. S. A. 1973 Supp. 21-3404 as follows:

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety."

Involuntary manslaughter is distinguished from voluntary manslaughter and second degree murder by the lack of malice and intent to kill. The record on appeal does not reveal any specific evidence on the issue of intent to kill. The only theory of defense which defendant put forth was denial of the killing. In support of his request for an instruction on involuntary manslaughter, defendant cites prior cases in which we have reversed for lack of such an instruction when the charge was second degree murder. (*State v. Weyer,* 210 Kan. 721, 504 P. 2d 178; *State v. Warbritton,* 211 Kan. 506, 506 P. 2d 1152.) Those cases are not applicable to the facts in this situation. They turned on the evidence of defendant's intent at the time of the killing, and lack of intent to kill was the only defense.

K. S. A. 1973 Supp. 21-3107 (3) makes it the duty of the court to instruct the jury, not only as to the crime charged, but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced. After careful search of the record we find no evidence from which the jury could conclude defendant killed Meeks but did not intend his death. If the jury believed Officer Dunlap's testimony, it could conclude defendant was guilty of killing Meeks with or without malice and find him guilty of second degree murder or voluntary manslaughter. If the jury chose to believe Zumalt's testimony that the victim went over the top of the rail while running from the fight, then it could only find defendant not guilty of any form of homicide. Under the evidence and circumstances presented by this case, the court did not err in failing to instruct on involuntary manslaughter.

Defendant's third point on appeal contends the trial court erred in admitting into evidence defendant's clothing worn at the time of the killing. The articles of clothing had been chemically tested for blood and the chemist testified the tests were inconclusive on the question of whether or not any human blood was present. Defendant contends the evidence was irrelevant and its admission served only to arouse the passion, prejudice and sympathy of the jury. Defendant is correct in his assessment that the evidence is irrelevant; but we fail to see how the viewing of clothing, with the accompanying testimony of the chemist that there was little or no blood on it, aroused the passions of the jury. Admissibility of a physical object is within the sound discretion of the court and is to be determined by the trial judge on the basis of its relevance and connection with the accused and with the crime charged. (*State v. Robinson*, 203 Kan. 304, 454 P. 2d 527.) Admission of the clothing in this case did not adversely affect defendant's fundamental right to a fair and impartial trial and, therefore, was not an abuse of discretion constituting reversible error.

Defendant's final point on appeal contends it was error to allow into evidence Zumalt's prison records through testimony of Officer Herman Vogel. The defense called Zumalt as its witness and on direct examination elicited that he was serving a twenty-five year sentence for attempted murder and had five or six prior felony convictions, including two convictions for robbery. The defense, no doubt, intended to impress the jury with the truthfulness of the witness by these candid admissions of past convictions of crimes of

moral turpitude. In cross-examination efforts to impeach the witness, Zumalt contended he had never been convicted of any institutional offenses or infractions of prison rules. He specifically denied any offenses such as bribery or lying to an officer. In rebuttal efforts to impeach Zumalt, Officer Vogel testified as to Zumalt's convictions under prison rules by an administrative determination referred to as "courtline." Vogel's testimony that Zumalt had pled guilty to both lying to an officer and attempted bribery was supported by his reading from Zumalt's official prison record. Defendant objected to the admission of the testimony as hearsay. Vogel was not the custodian of the record, did not make any of the entries therein, and had no first-hand knowledge of the violations since he was not involved in the administrative determinations or "courtline." The state argues the records are admissible under the business records exception to the hearsay rule. (K. S. A. 60-460 [*m*].)

Officer Vogel admitted he had no personal knowledge of the disciplinary incidents to which he testified, but relied upon the records before him. There was no proper foundation laid for admission of those records under the business records exception to the hearsay rule. (*Jay-Ox, Inc., v. Square Deal Junk Co., Inc.,* 208 Kan. 856, 494 P. 2d 1103.) Since they were not properly introduced into evidence as business records they are written hearsay and cannot be used to support the hearsay testimony of Officer Vogel. The admission of his hearsay based upon the written hearsay is error, but in light of the purpose of the testimony, impeachment, it is harmless error. The jury had before it Zumalt's admissions of past convictions for crimes involving moral turpitude. Vogel's testimony was directed to the same issue. Only where trial error adversely affects some substantial right of a party does it constitute prejudicial error. (*State v. Earsery,* 199 Kan. 208, 428 P. 2d 794; *State v. Cruitt,* 200 Kan. 372, 436 P. 2d 870; *State v. Armstrong,* 207 Kan. 681, 486 P. 2d 1322.) Under these circumstances, we find no prejudice to defendant's substantive rights and no reason for reversing this conviction.

Judgment of the trial court is affirmed.